OPINION OF THE COURT
Arthur J. Abrams, J.
Before this court is a continuing Uniform Support of Dependents Law matter as well as a custody petition referred to us for hearing and determination by the Supreme Court of Suffolk County.
Elaine Schaeffer, petitioner in the Uniform Support of Dependents Law petition and plaintiff, although not the movant, in the Supreme Court custody referral, hereinafter referred to as petitioner, is the former spouse of James Schaeffer, the respondent in the aforesaid Uniform Support of *119 Dependents Law proceeding and defendant in the custody referral, hereinafter referred to as respondent. The parties were granted a judgment of divorce by the Supreme Court, Suffolk County, on November 17, 1975. Pursuant to that judgment of divorce, custody of the child of the marriage, Jamie Schaeffer, born May 7, 1964, was awarded to petitioner. Thereafter, petitioner removed herself to the State of Florida where she has since continuously resided with Jamie. Subsequent thereto, numerous hearings have been held by this court concerning support for Jamie and visitation with the boy by respondent. With respect to the issue of support, the respondent’s past conduct has been found by this court on one occasion to be contumacious to the point where a jail commitment was invoked in order to enforce the order of the court. We note that that commitment was suspended on December 6, 1978 on condition that there be strict future compliance with the order of this court.
On May 4, 1979, respondent sought to suspend all further support payments for Jamie as directed in the amended order of support dated December 6, 1978. He further sought suspension of the payroll deduction order of the same date and also requested that all moneys being held in escrow by the Suffolk County Support Collections Unit (withheld to insure adequate visitation to respondent) be released immediately. After the hearing, respondent’s application was denied in all respects and the prior orders of this court continued, including the condition that the support moneys be held in escrow to insure that petitioner permitted Jamie to visit with his father during the summer of 1979.
In the latter part of June, 1979, Jamie was sent to New York by petitioner to visit with his father for a five-week period as provided by order of this court. Since that time, respondent has refused to return the child to petitioner.
By order to show cause dated July 9, 1979, petitioner sought a release of all escrow funds deposited with the Suffolk County Support Collection Unit and a continuance of the support order. Respondent cross-moved for the same relief sought at the previously alluded to May 4, 1979 hearing. Thereafter, respondent instituted a proceeding for custody of Jamie in the Supreme Court, Suffolk County, which matter was subsequently referred to the Family Court for hearing and determination by order dated August 29, 1979.
Petitioner has objected to the assumption of jurisdiction of *120 the custody issue by this court, alleging that the provisions of the Uniform Child Custody Jurisdiction Act (Domestic Relations Law, art 5-A) prohibit the court from making a determination thereto. Since the defense of subject matter jurisdiction cannot be waived, and may be raised, even by the court on its own motion, at any stage of the action (CPLR 3211, subd [e]; Eckert v Eckert, 34 AD2d 684; Robinson v Oceanic Steam Nav. Co., 112 NY 315; Wildeb Rest. v Jolin Rest., 69 Misc 2d 1012), the court will first rule on this issue.
It is undisputed that Jamie has continuously resided with his mother in Florida since 1976. "Home state” as used in article 5-A (Uniform Child Custody Jurisdiction Act) of the Domestic Relations Law "means the state in which the child at the time of the commencement of the custody proceeding, has resided with his parents, a parent, or a person acting as parent, for at least six consecutive months.” (See Domestic Relations Law, § 75-c, subd 5.) Ordinarily, the "home state” has exclusive custody jurisdiction, but there are exceptions under the Uniform Child Custody Jurisdiction Act; these are spelled out in section 75-d (subd 1, pars [b], [c]) of the Domestic Relations Law. This subdivision reads as follows: "1. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree only when: * * * (b) it is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is within the jurisdiction of the court substantial evidence concerning the child’s present or future care, protection, training, and personal relationships; or (c) the child is physically present in this state and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child”.
Conceding that Mr. Schaefer has significant connections with this (New York) State, we find no substantial evidence in New York of the child’s present or future care, protection, training, and personal relationships. Thus, paragraph (b) does not come into play as this information is clearly more readily available in the child’s State of domicile, Florida.
Section 75-d (subd 1, par [c]) of the Domestic Relations Law gives jurisdiction to this court to modify a decree when the child is physically present in this State (as herein) and (i) the child has been abandoned (not alleged) or (ii) it is necessary in *121 an emergency to protect the child. This requires a showing of substantial physical or emotional harm to the child. Routine allegations in affidavits, etc. (as tendered herein) will not be regarded as sufficient ground for assuming jurisdiction (Ferreira v Ferreira, 9 Cal 3d 824).
To recapitulate, the papers before the court reveal the following: (1) Jamie has no significant connection with New York as he has resided with his mother in Florida since 1976. (2) There is not any indication that any substantial physical or emotional harm will befall Jamie if he is returned to petitioner. (3) There is not any substantial evidence concerning the child’s present or future care, protection, training and personal relationships in this State — all of this information is more readily available in Florida.
Among the various purposes of article 5-A of the Domestic Relations Law are the promotion of "cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child” (emphasis supplied) and the deterring of "abductions and other unilateral removals of children undertaken to obtain custody awards” (see Domestic Relations Law, § 75-b, subd 1, pars [b], [e]). Section 75-i of the Domestic Relations Law states if a petitioner (party seeking relief, respondent herein) for an initial decree has wrongfully taken a child from another State or has engaged in similar reprehensible conduct the court may decline to exercise jurisdiction if this is just and proper under the circumstances. Although the Supreme Court of New York was the court which initially had jurisdiction over the parties herein, the State which awarded petitioner a divorce from respondent and the State which granted her custody of the child, Jamie, it has been established that petitioner and Jamie are no longer New Yorkers but Florida domiciliaries.
The intent of the Uniform Child Custody Jurisdiction Act is to terminate wrongfully custodial takings or withholdings. We deem respondent’s actions to be such a withholding. For the various reasons set forth throughout this memorandum decision, we find the respondent’s behavior reprehensible and without extenuating circumstances, thus, decline to exercise jurisdiction over the custody application. (Cf. Nehra v Uhlar, 43 NY2d 242, 251.)
The petition for custody is dismissed, Jamie is to be returned to his mother, forthwith, upon the service on respon *122 dent’s attorney of a copy of the order to be entered herein. The cost of Jamie’s transportation to Florida is to be borne by respondent at his sole cost and expense.
Since there has been compliance with the summer visitation afforded to respondent as ordered by this court, all moneys presently being held in escrow by the Suffolk County Support Collection Unit are to be forwarded to the initiating court for purposes of transmittal to the petitioner upon presentation to the said support collection unit of a copy of the order to be entered herein. The amended order of support dated December 6, 1978 is continued. Should respondent fail to comply with the court’s directive, the court will, of course, entertain a contempt petition.
This constitutes the decision of the court and all motions upon which decision was reserved are resolved accordingly.