OPINION OF THE COURT
David Freundlich, J.
In this proceeding commenced pursuant to Family Court Act § 651 and Domestic Relations Law § 75-a et seq. (Uniform Child Custody Jurisdiction Act [U.C.C.J.A.]), the petitioner L. H. seeks an order of this court awarding her the sole and exclusive custody of her infant daughter, L. M. (date of birth Oct. 19, 1988), and, further, staying all proceedings now pending in the Republic of Germany relative to the custody, guardianship and/or adoption of the said infant. The instant matter is before this court pursuant to order to show cause entered by the undersigned on December 4, 1990, with enumerated ex parte relief contained therein.
*492 The sole issue before the court at this juncture is whether the court has jurisdiction over the matter pursuant to the applicable provisions of the U.C.C.J.A., to wit, Domestic Relations Law §§ 75-d and 75-w (international application). The court’s jurisdiction, although initially determined ex parte in the order to show cause dated December 4, 1990 (albeit temporarily), has been challenged by the respondents R. B. and A. B. by way of cross motion dated January 23, 1991. The respondents, who presently have custody of the infant in the Republic of Germany, and who are parties to a custody proceeding presently pending in Germany, allege that the New York court lacks jurisdiction pursuant to the provisions of the U.C.C.J.A., specifically Domestic Relations Law § 75-d. In the alternative, the respondents aver that New York is an "inconvenient forum” under Domestic Relations Law § 75-h, and, to that end, a dismissal of this proceeding is sought in favor of the continuance of the present litigation in the Republic of Germany.
The relevant jurisdictional facts are not disputed in the moving papers. In addition to the papers, the court has also engaged in a lengthy jurisdictional discussion with the Judge presiding over the proceedings in Germany, to wit, Hon. Helga Rusvay, which discussion was had via overseas telephone on February 4, 1991, as arranged and translated by the appointed Law Guardian, Christine Grobe, Esq., who is fluent in the German language. Incidental to said discussion, a written synopsis of the prior and pending German proceedings, as well as a jurisdictional opinion, was faxed to the undersigned (via Ms. Grobe) by Judge Helga Rusvay on February 6, 1991. Based upon the foregoing papers and communications, and in consideration of the arguments of counsel made on the record on February 8, 1991, the court makes the following jurisdiction findings and conclusions in this matter.
The subject infant, L. M. H., was born on October 19, 1988 in Suffolk County, New York. Her parents, L. H. and V. H. who were then married, had two other children at the time, neither of whom are involved in this proceeding. Mr. V. H., a member of the United States Armed Forces, was ordered to a United States military base in Wiesbaden, Germany, sometime in April 1989, whereupon the entire H. family relocated to military housing in that country.
Several months after their arrival in Germany, the subject infant (L.), then nine months of age, was severely and brutally beaten while in the H. home. On July 10, 1989 (five days after *493 the child was brought to a United States military hospital in comatose condition), the Youth Welfare Office of Wiesbaden, Germany, charged the H.’s with criminal child abuse and otherwise sought, and obtained, an emergency removal order for the three H. children incidental to civil guardianship proceedings commenced by the Youth Welfare Office at the same time. Upon placement of the children with the Juvenile Department of Wiesbaden, the children were transferred to foster care in Germany. It appears that the placement of the children was consented to by the H.’s executing written guardianship instruments in favor of the United States Army Family Advocacy Program on July 6, 1989; however, it further appears that the German court removal order superceded such written consents. Pursuant to said removal orders, L. ultimately was placed with the respondents, R. and A. B. who are United States citizens residing in the Republic of Germany.
Thus, as of July 10, 1989, there were criminal abuse actions instituted against the H.’s and there were civil "custody” proceedings commenced against the H.’s, the latter being filed in the Wiesbaden Guardianship Court, with Judge Helga Rusvay assigned thereto. All three H. children were placed in foster care under the temporary guardianship of the Youth Welfare Office of Wiesbaden.
The criminal charges against L. H. in Germany were ultimately dismissed, albeit for reasons not apparent on this record. Notwithstanding the disposition of the criminal matters, the civil guardianship proceedings against Mrs. H. continued and were ultimately scheduled for final hearing on May 10, 1990.
Prior to the commencement of the final guardianship hearing, and presumably after the disposition of the criminal case, two of the H. children were released from foster care and placed with Mrs. H.’s mother, M. N. On March 6, 1990, Mrs. N. was appointed guardian for the two children, and she returned to New York, leaving Mrs. H. and the infant, L., in Wiesbaden. It appears that the two children were released in this manner due to the fact that there was no significant evidence of abuse to them by Mr. or Mrs. H.
The "guardianship” hearing was then conducted before Judge Rusvay on May 29, 1990. Mrs. H. who was represented by counsel, participated in said hearing, as did the foster parents, R. and A. B.
*494 On June 1, 1990, Judge Rusvay issued a memorandum decision and order in the aforesaid proceeding. After reciting the relevant history of the case, Judge Rusvay found, among other things, that Mrs. H. neglected her parental duty towards her daughter on or about July 5, 1989, when the child sustained "life endangering injuries”. The court specifically found that "the decisive factor is that the mother either committed the offense or did not do anything to prevent it, and does not explain why she was unable to prevent her child from being injured.”
The court thereupon continued its prior order of July 10, 1989 and directed that L.’s custody remain with the Youth Welfare Office, with foster placement with the B.’s subject to ongoing review and monitoring of Mrs. H.
It is indeed significant that in addition to the foregoing, the Wiesbaden Guardianship Court specifically determined that it had jurisdiction over the question of L.’s custody under the German Civil Code, on the basis that Germany was the child’s "main residence”. The court also noted that: "The deciding court does not have exclusive jurisdiction, since jurisdiction also lies with New York, the home state. This however, does not preclude the jurisdiction of the deciding court.”
It appears that after the entry of the June 1, 1990 decision and order, Mrs. H. appealed to a higher German tribunal, which appeal was denied on August 24, 1990. Thereafter, by written application dated July 5, 1990 and filed in pro se fashion, Mrs. H. notified the German court that she was returning to New York and that she was again requesting the return of her child. Apparently, a more formal application in this regard was made on her behalf by Mrs. H.’s German attorney on September 6, 1990. That application was accepted by the court, and, based upon communications had with Germany, the application is open and pending.
This proceeding was commenced in New York in December 1990, after Mrs. H. caused Suffolk County Department of Social Services home studies to be forwarded to Germany, which were rejected by the Wiesbaden court.
In her faxed statement of February 6, 1991, Judge Rusvay stated: "I am of the opinion that I have continuous jurisdiction over the matter since 7-10-89.”
In support of her claim that this court has jurisdiction over the issue of L.’s custody, Mrs. H. contends that New York is the child’s "home State” within the meaning of Domestic *495 Relations Law § 75-d (1) (a), inasmuch as the child was out of the country only temporarily due to parental military obligations. Further, Mrs. H. avers that jurisdiction may also be founded upon the "significant connection” test set forth in Domestic Relations Law § 75-d (1) (b). On the other hand, the respondents suggest that the opposite is the case, that is, that Germany is the child’s home "State” and that Germany has the more significant connection with the subject child. Respondents also point out that a proceeding of and concerning the custody of the child is (and has been) pending in Germany, and that two custody determinations were made by the German court prior to the commencement of the proceeding in this court.
Initially, this court notes that although Domestic Relations Law § 75-w provides that the U.C.C.J.A. shall have "international application”, there is no international treaty or comparable pact among the nations of the western world that would mandate application of the U.C.C.J.A. by the German court in this matter. Indeed, the facts and circumstances herein do not give rise to the administration of the 1980 Convention on the Civil Aspects of International Child Abduction, commonly referred to as the Hague Convention (reprinted at 51 Fed Reg 10498, Appendix B; 42 USC § 11601 et seq. [International Child Abduction Remedies Act]). There being no wrongful removal or retention of a child (Hague Convention art 3), the Hague Convention has no bearing whatsoever in this case. (See, e.g. Sheikh v Cahill, 145 Misc 2d 171 [Sup Ct, Kings County 1989].) Thus, this court is to act, or not act, as the case may be, solely upon the strength of its own statutes and rules, albeit with the stark recognition that the tribunal in the Republic of Germany is under no duty to recognize any declaration that may be made herein.
However, this court is under a duty to apply the provisions of the U.C.C.J.A. in this proceeding, just as it would were this a jurisdictional conflict between New York and Florida, or any other "State”, as that term is defined in Domestic Relations Law § 75-c (10). As noted, supra, the U.C.C.J.A is to be extended to the international area, as per Domestic Relations Law § 75-w, meaning that the actions of a foreign tribunal "are entitled to deference if its regard for due process parallels that of the courts of this State, and if such deference would further the policies of the UCCJA.” (Lotte U. v Leo U., 128 Misc 2d 896, 898 [Fam Ct, NY County 1985].)
In this regard, the court notes that the proceedings against *496 Mrs. H. in Germany appear to have been fairly and properly prosecuted, with all due regard to the right of notice, the right to counsel and the right to be heard and/or defend the claims made. Further, this court has been given all relevant information by the Judge presiding in Wiesbaden, and has otherwise engaged in intelligent and sound communication with the foreign Judge, as would normally be welcomed under Domestic Relations Law § 75-g. Thus, given the propriety of the proceedings in Germany, and in light of the spirit of cooperation extended by the Wiesbaden Judge, this court firmly believes that the provisions of the U.C.C.J.A. must be strictly applied to the jurisdictional question posed by the parties herein. (Cf., Klien v Klien, 141 Misc 2d 174 [Sup Ct, Kings County 1988].)
Resolution of the jurisdictional issue before the court requires an examination of two predicates in the U.C.C.J.A. which are directly controlling in this proceeding. The first, and paramount issue, is whether any of the jurisdictional grounds set forth in Domestic Relations Law § 75-d may be satisfied by the facts herein. The second, and equally important issue is whether the jurisdiction of Germany is lacking, or no longer effective, thereby permitting this court to modify the existing Germany orders within the meaning of Domestic Relations Law § 75-o and 28 USC § 1738A (Parental Kidnaping Prevention Act [P.K.P.A.]). Indeed, in this regard, Mrs. H. is specifically asking that this court modify the order entered in Wiesbaden on June 1, 1990 so as to return custody of L. to her. In order to entertain such a request, this court must find that Germany no longer has jurisdiction over the matter and that New York does have jurisdiction. (Perkins v Perkins, 134 AD2d 416 [2d Dept 1987]; Matter of Tenenbaum v Sprecher, 133 AD2d 371 [2d Dept 1987].)
Based upon the undisputed facts herein, the court is convinced that New York does not have jurisdiction to make a custody determination and/or to modify the Germany custody orders within the meaning of Domestic Relations Law § 75-d.
As of December 1990, when this action was commenced, L. had been residing continuously and exclusively in Germany for in excess of 20 months. Her only contact with New York was during the first months of her life, having been born here in October 1988 and having lived here with her parents until April 1989, whereupon the entire family relocated to Germany. Mrs. H. herself was continuously present in Germany from April 1989 until July 1990.
*497 Given that L. has been residing in Germany for 20 continuous months prior to the commencement of this proceeding, and in view of her present residence in Germany, it is abundantly clear that New York is not the child’s "home State” within the meaning of Domestic Relations Law § 75-d (1). The fact that L. was, and is, in Germany as a result of parental military obligations is of no consequence, nor can "home State” jurisdiction be found on the novel theory that L. was only temporarily absent from the State, as if L. were on a brief visitation sojourn. (See, e.g., Matter of Patricia R. v Andrew W., 121 Misc 2d 103 [Fam Ct, NY County 1983].)
Likewise, the court cannot find that L. has a "significant connection” with New York, nor can it be fairly said that there is substantial evidence in New York concerning the child’s care, protection, training and development. (Domestic Relations Law § 75-d [1] [b].) To the contrary, the child is fully and completely connected to the Republic of Germany, and, based upon the events and proceedings in Germany, it is clear that most, if not all of the evidence of the child’s "best interests” remains in the foreign forum.
In light of the foregoing, and considering that the remaining jurisdictional predicates under Domestic Relations Law § 75-d have no application in this case, the court is satisfied that it lacks jurisdiction under the U.C.C.J.A.
It should be noted that even if New York were to have jurisdiction under Domestic Relations Law § 75-d (1), it could not exercise that jurisdiction and modify the orders of the Wiesbaden Guardianship Court, due to the fact that the custody jurisdiction of Germany has already attached and is otherwise continuing. In other words, Germany has not lost, relinquished or divested itself of its jurisdiction over the current proceeding involving L. and her mother. The continuance of that jurisdiction absolutely precludes this court from modifying, changing or altering the orders that already have been entered in the foreign court, which orders have ostensibly been made in proceedings that do not appear to offend either the policies of the U.C.C.J.A. or the due process notions of our Federal and State Constitutions. Thus, this court is prevented from acting under both the U.C.C.J.A. (Domestic Relations Law § 75-o) and the P.K.P.A (28 USC § 1738A), and under applicable case law. (Perkins v Perkins, supra.)
Although not essential or germane to the issue of jurisdiction herein, the court should point out that the Wiesbaden *498 court has indicated in no uncertain terms that it believes that it has full and continuing jurisdiction over the matter of L.’s custody. Communication was properly had between the courts, with simultaneous proceedings pending in both forums. The applicable law (Domestic Relations Law § 75-g) requires that there be a judicial exchange of thoughts and positions, to the end that the litigation take place in the more appropriate forum. Again, considering the long history of the Wiesbaden proceeding, and in light of the substantial connection between the parties, the child, and the Republic of Germany, this court is constrained to defer to the jurisdictional position taken by Judge Rusvay in this matter.
The court recognizes that its ruling in this proceeding may result in hardship to Mrs. H. and that she will be compelled to litigate this matter in a foreign country that has not been completely sympathetic to her plight. The court also understands that L. and her mother are United States citizens who did not purposefully invoke the jurisdiction of the foreign court, nor did they foresee that their presence in Germany would lead to such an emotional and frustrating dispute with German authorities. However, the court cannot assume jurisdiction on the basis of protecting United States citizens, or upon feelings of pity and sympathy, or upon considerations or principles not otherwise addressed in the law. As stated, the court is duty bound to act, or not act, solely upon the statutory framework which it must adhere to, to wit, the U.C.C.J.A. and the P.K.P.A. The application of those laws herein compels the court to reject jurisdiction over the matter of the custody of L. M. H.
Based upon the foregoing, the instant proceeding is dismissed, without prejudice to further actions and proceedings now pending, or to be filed in the future, in the courts of Germany. This determination is limited to the question of the power of this court to act, there being no finding or inference that Mrs. H. should, or should not, have custody of her infant daughter.