In re Susan POWERS, Relator.

No. 14–98–00392–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

July 16, 1998.

Richard L. Merrill, Houston, for relator.

Marlene M., Zinsmeister, Sugar Land, Brian J. Fishcher, Houston, for respondent.

Before LEE, ANDERSON and EDELMAN, JJ.

## OPINION

ANDERSON, Justice.

This mandamus proceeding involves the validity of temporary orders prescribing parental visitation rights to a child who never lived in Texas. The trial court signed the temporary orders in response to a motion to modify an agreed paternity decree. Relator, Susan Powers, contends the trial court clearly abused its discretion in signing the temporary orders and that such orders are partially void because the court lacked subject matter jurisdiction to determine visitation matters. We agree and conditionally grant the writ of mandamus.

## BACKGROUND

Relator and the real party in interest, Dr. Walter Scott Breeze, began a relationship in early 1992. On December 22, 1993, their daughter, Katherine, was born in Iowa, where she currently lives with relator. On January 31, 1994, Dr. Breeze, a Texas resident, filed an original petition to establish paternity of Katherine. The petition was filed in the 313th Judicial District Court of Harris County, Texas. In his petition, Dr. Breeze requested that Powers be appointed sole managing conservator. He also requested "that appropriate orders be made for support and access." On June 10, 1994, Powers moved to dismiss Dr. Breeze's petition for lack of subject matter jurisdiction over the custody and visitation matters because the child's home state was in Iowa. In the same document and subject to the motion to dismiss, Powers answered the petition and counterclaimed for child support, medical expenses and insurance, and attorney's fees. Powers also filed a brief in support of her motion to dismiss. The record does not reflect that the trial court ruled on the motion to dismiss. On January 22, 1996, over a year after the parties had announced their agreement to the court, the trial court signed an agreed paternity decree establishing Dr. Breeze's paternity and requiring him to pay child support and provide medical insurance. The decree does not contain specific orders on custody or visitation but contains "Mother

Hubbard" language "that all relief requested in this cause and not expressly granted is denied."

On December 9, 1997, Dr. Breeze moved to modify the agreed paternity decree. In that motion, Dr. Breeze sought a voluntary increase in child support and specific orders on custody and visitation. On January 11, 1998, Powers answered the modification suit subject to an objection to the court's exercise of subject matter jurisdiction over custody and visitation. Four days later, Dr. Breeze amended his motion to modify by dropping the custody issue. Dr. Breeze continued, however, to seek orders on visitation and support. At a hearing in January 26, 1998, the associate judge overruled Powers' objection. Four days later, Powers filed in an Iowa district court a petition seeking orders on visitation. On the same date she filed her Iowa petition, Powers filed in the Texas court a motion for rehearing of the associate judge's ruling on her objection to jurisdiction. At a hearing on February 4, 1998, the associate judge overruled the motion. On February 9, 1998, Powers appealed the associate judge's ruling to the respondent, The Honorable Pat Shelton, Presiding Judge of the 313th District Court. At a hearing four days later, the respondent refused to reverse the associate judge's ruling. On February 25, 1998, the respondent signed temporary orders increasing child support and granting visitation, by setting out times for possession of and access to Katherine. On April 7, 1998, Powers filed this petition for writ of mandamus.

## ANALYSIS

■ As a threshold matter, we address whether this case is appropriate for mandamus. Mandamus relief is available if the trial court violates a duty imposed by law or clearly abuses its discretion either in resolving factual issues or in determining legal principles when there is no other adequate remedy at law, such as a normal appeal. *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992). A trial court clearly abuses its discretion if "it reaches a decision so arbi-

trary and unreasonable as to amount to a clear and prejudicial error of law." *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985). When alleging that a trial court clearly abused its discretion in its resolution of factual issues, the party must show the trial court could reasonably have reached only one decision. *Id.* at 918. With regard to the determination of legal principles, a clear abuse of discretion occurs if the trial court clearly fails to analyze or apply the law correctly. *Walker*, 827 S.W.2d at 840.

■ Here, Powers complains the trial court misapplied the law by signing temporary orders on visitation when it lacked subject matter jurisdiction over the child's status under the Uniform Child Custody Jurisdiction Act (UCCJA).[1] Thus, Powers contends those orders are partially void and constitute a clear abuse of discretion. Such a complaint is appropriate for mandamus. Further, where the trial court's order is void, the relator need not show the absence of an adequate remedy at law and mandamus will issue. *Milton v. Herman*, 947 S.W.2d 737, 742 (Tex.App.—Austin 1997, orig. proceeding). Finally, relator is without an adequate remedy by appeal because temporary orders are not appealable. *See Little v. Daggett*, 858 S.W.2d 368, 369 (Tex.1993). Because mandamus is appropriate, we will address the merits of relator's petition.

■ A court's jurisdiction consists of two elements: jurisdiction of the subject matter and jurisdiction of the person. *Johnson v. Pettigrew*, 786 S.W.2d 45, 46 (Tex. App.—Dallas 1990, no writ). Generally, if one of the elements is missing, the court's judgment is subject to collateral attack and any judgment or order rendered by the court is void. *Id.* As stated, the trial court signed temporary orders on visitation and child support. A claim for child support is like a claim for debt in that it seeks a personal judgment establishing a direct obligation to pay money. *See In Interest of S.A.V.*, 837 S.W.2d 80, 83 (Tex.1992). Therefore, a valid judgment or order for child support may be rendered by a court having only personal

---

1. *See* TEX. FAM. CODE ANN. § 152.001 *et seq.* (Vernon 1996 and Supp.1998). One purpose of

the UCCJA is to avoid jurisdictional conflicts with courts of other states. *Id.* § 152.001(a)(1).

jurisdiction over the one to be obligated by the debt. *See id.*

There is no dispute that the trial court had personal jurisdiction over Dr. Breeze to enter temporary orders on child support. Powers also concedes the trial court had personal jurisdiction over her to rule on the paternity issue. *See* TEX. FAM. CODE ANN. § 102.011(b)(6) (the court may exercise personal jurisdiction over a nonresident "if the person engaged in sexual intercourse in this state and the child may been conceived by that act of intercourse"). Instead, Powers argues the trial court did not have subject matter jurisdiction to enter temporary orders on visitation. Unlike adjudications of child support, custody determinations are status adjudications not dependent upon personal jurisdiction over the parents. *See S.A.V.*, 837 S.W.2d at 84. Rather, jurisdiction over custody determinations is ordinarily governed by the UCCJA. *See id.* Indeed, regarding nonresidents, the court may exercise status or subject matter jurisdiction over the suit only as provided by the UCCJA. *See* TEX. FAM. CODE ANN. § 102.011(a) (Vernon 1996).

Recognizing the strong state interest in determining the custody of children, both Texas and Iowa have adopted the UCCJA. *See* TEX. FAM. CODE ANN. § 152.001 *et seq.; see also* IOWA CODE ANN. § 598A. *et seq.* Under the UCCJA, a state court's jurisdiction to make a custody determination either by initial decree or modification decree is determined by the child's home state on the date of the commencement of the proceeding. *See S.A.V.*, 837 S.W.2d at 84; *See* TEX. FAM. CODE ANN. § 152.003(a); IOWA CODE ANN. § 598A.3(1)(a).[2] A "home state" means "the state in which the child, preceding the time involved, lived with the child's parents, a parent, or a person acting as parent for at least six consecutive months and, in the case of child less than six months old, the state in which the child lived from birth with any of the persons mentioned." *Id.* at § 152.002(6). It is undisputed that Iowa was Katherine's home state when Dr. Breeze initiated his paternity action and modification suit[3]. Texas has never been Katherine's home state. Therefore, under the UCCJA, Iowa, not Texas, has jurisdiction over Katherine's status. The fact that Katherine's home state is not Texas will deprive Texas courts of jurisdiction over visitation matters affecting her unless a Texas court has continuing jurisdiction under Chapter 155 of the Family Code. *See Little*, 858 S.W.2d at 369.

Dr. Breeze argues the UCCJA is inapplicable because the paternity decree and the subsequent modification do not involve a "custody determination."[4] Dr. Breeze originally sought custody orders, but when Powers objected to jurisdiction, he amended his motion to modify, dropping the custody issue. Because his amended motion sought orders on visitation, not custody, Dr. Breeze contends the UCCJA was not triggered and Texas had continuing jurisdiction to enter orders on support and visitation under Chapter 155 of the Texas Family Code. This argument ignores the statutory definition that a "custody determination" under the UCCJA

---

**2.** These statutes further confer jurisdiction if (1) it appears that no other state would have jurisdiction as the child's home state and it is in the best interest of the child that the state assume jurisdiction because the child and at least one contestant have a significant connection with the state and the availability in the state of substantial evidence concerning the child's care, protection, training and personal relationships, (2) the child is physically present in the state in an abandonment or emergency situation that threatens the child's welfare; and (3) it is in the best interest of the child that the court assume jurisdiction because it appears no other state would have jurisdiction under the above prerequisites or another state has declined jurisdiction. *See* TEX. FAM. CODE ANN. § 152.003(a)(2)-(4); *see also* IOWA CODE ANN. § 598A.3(1)(b)-(d).

**3.** Both the original 1996 paternity decree and the 1998 temporary orders challenged here state that Iowa is Katherine's home state.

**4.** It is evident from the language of § 152.003 that a party must comply with its provisions when pursuing a child "custody determination". A child "custody determination" includes visitation rights. Section 152.002(11) defines "visitation" as possession of or access to a child. Dr. Breeze's January 16, 1998 first amended motion to modify agreed paternity decree requests orders for possession of and access to Katherine. Because he was requesting a court to make a child custody determination, Dr. Breeze triggered the provisions of the UCCJA.

includes "court orders or instructions" providing for "visitation rights." *See* TEX. FAM. CODE ANN. § 152.002(3). Relying on Fifth Circuit and Texas case law, Dr. Breeze argues that "custody" is distinguishable from "visitation" and that a determination of the former does not necessarily include the latter. While the cases cited by Dr. Breeze do make this distinction, it is only in the context of addressing the exceptions to continuing jurisdiction once jurisdiction has been previously established under the Family Code. *See Heartfield v. Heartfield,* 749 F.2d 1138 1141–42 (5th Cir.1985); *Beaber v. Beaber,* 971 S.W.2d 127, 128–29 (Tex.App.— Houston, [14th Dist], n.w.h.); *Welborn–Hosler v. Hosler,* 870 S.W.2d 323, 327 (Tex. App.—Houston [14th Dist.] 1994, no writ); *Hemingway v. Robertson,* 778 S.W.2d 199, 201 (Tex.App.—Houston [1st Dist] 1989, no writ); *Hutchings v. Biery,* 723 S.W.2d 347, 349 (Tex.App.—San Antonio, 1987, no writ). In other words, continuing jurisdiction existed in those cases only because there were valid, prior custody and/or visitation orders. *See Heartfield,* 749 F.2d at 1141; *Beaber,* at 128 *Welborn–Hosler,* 870 S.W.2d at 324; *Hemingway,* 778 S.W.2d at 200; *Hutchings,* 723 S.W.2d at 348.

Here, the trial court did not have continuing jurisdiction over visitation, as Dr. Breeze contends, because it never had subject matter jurisdiction in the first place to render a prior visitation or custody order. *See* TEX. FAM. CODE ANN. § 102.012(b)(2) (Vernon 1996)(court's authority to resolve all issues in controversy between the parties may be restricted because the court lacks the required jurisdiction under Chapter 152, the UCCJA). A Texas court may exercise continuing jurisdiction to modify a prior order on custody, visitation, and support. *See* TEX. FAM. CODE ANN. §§ 155.001(a), 155.003(a). In the January 22, 1996 agreed paternity decree, the trial court established Dr. Breeze's paternity and set forth the conditions for child support and insurance coverage. As we noted, the decree does not expressly provide for custody or visitation as requested by Dr. Breeze's petition, but simply denies that relief with "Mother Hubbard" language, instead of language dismissing those portions of the petition. Because Katherine's home state has always been Iowa, the trial court never had jurisdiction to enter a custody determination by initial decree. *See* Tex. FAM. CODE ANN. § 152.003(a)(1). Continuing jurisdiction over visitation issues cannot be manufactured based on an order directly addressing only paternity and support issues. Any language in the agreed paternity order purporting to address custody or visitation issues is void because the court simply did not have subject matter jurisdiction. *See Johnson,* 786 S.W.2d at 46; *see also* TEX. FAM. CODE ANN. § 152.003(a)(1)(A). This is so even though Powers did not obtain a ruling on her motion to dismiss. Subject matter jurisdiction cannot be conferred by consent, waiver or estoppel at any stage of a proceeding. *Bloom v. Bloom,* 935 S.W.2d 942 (Tex. App.—San Antonio 1996, no writ). Without a prior order on visitation matters, there is no continuing jurisdiction and the UCCJA controls. *See Little v. Daggett,* 858 S.W.2d 368, 369 n. 4 (Tex.1993).[5]

Texas never was Katherine's home state. Further, no Texas court had continuing jurisdiction over visitation issues. Therefore, the trial court lacked jurisdiction to enter temporary orders on visitation and the parts of the temporary orders granting visitation are void. The remaining portions of the February 25, 1998 temporary orders remain in effect. Accordingly, we conditionally grant the writ of mandamus. We are confident the trial court will vacate those portions of its February 25, 1998 temporary orders granting visitation. If the trial court fails to comply, the writ will issue.

---

5. In *Little,* the Court held that under the predecessor statute to § 152.003, Texas courts do not have jurisdiction over visitation matters where the child has resided with a parent in another state for six months, and that an earlier paternity case filed and later dismissed provided no basis for a Texas court to retain jurisdiction to enter an order on visitation. *See* 858 S.W.2d at 369. As to this latter holding, the court made it clear that continuing jurisdiction over visitation issues is predicated on a prior order addressing that subject matter. *Id.* n. 4 There is no such order here.