[711 NYS2d 199]

In the Matter of JAMIE K. CONSFORD, Respondent, v ERIC W. CONSFORD, Appellant.

Third Department, July 6, 2000

## APPEARANCES OF COUNSEL

*Blatchly & Simonson,* New Paltz (*Bruce D. Blatchly* of counsel), for appellant.

*Denise Dourdeville, Public Defender,* Kingston, for respondent.

## OPINION OF THE COURT

CARPINELLO, J.

The parties to this lawsuit were married in Denmark in May 1996 when both were serving in the military. Petitioner apparently grew up in New York, respondent in Texas.[1] It is unclear from the record what the parties' residences were prior to their respective enlistments in the armed services. Their only child, Erica, was born in Germany in November 1996. Upon completion of respondent's overseas assignment, on May 28, 1997 the parties went to Texas, where respondent's mother resided, awaiting his next military assignment. Petitioner had previously been discharged from the military.

The record also does not indicate where they stayed while in Texas, i.e., whether they obtained their own housing or simply stayed with respondent's mother. Nevertheless, they remained in Texas briefly—less than eight weeks—and then moved to Fort Huachuca, Arizona, where respondent had been reassigned. The couple experienced marital discord while in Arizona and separated on September 15, 1997. In late December 1997, petitioner took Erica to Florida (where her mother

---

1. We use the term "apparent" in describing the parties' backgrounds because, even though petitioner states in her brief that her "original home" and extended family are in Ulster County and respondent states in his brief that he "was born and raised in the 'Lone Star State'" (each statement being made without objection from the other), the record itself does not so indicate. However, in support of affirmance of Family Court's order, the Law Guardian reports to this Court that "[petitioner] was born and raised [in Ulster County], had reestablished a residence here and has relatives and friends in this county."

resided) and respondent initiated a divorce proceeding in Texas. Neither party lived or worked in Texas at the time the divorce action was commenced. Most notably, Erica did not live in Texas at that time nor had she ever lived there for more than the aforementioned eight weeks. In April 1998, petitioner moved back to Ulster County with Erica, where they continue to reside to date. Respondent continues to reside in Arizona.

On May 8, 1998, counsel for both parties appeared before the Texas court in the divorce matter. Petitioner did not personally appear because she believed the issue of custody had been resolved. No transcript of that proceeding is contained in the record. Subsequent to the May 8, 1998 appearance, petitioner learned that respondent did in fact dispute custody, prompting her to file a petition for rehearing in which she alleged that she had been deceived by respondent's promise not to seek custody. On October 9, 1998, a final decree of divorce was issued pursuant to which the parties were appointed Erica's joint managing conservators, the equivalent of joint legal custodians in New York, with respondent to serve as primary joint managing conservator, a status equivalent to primary physical custodian.

On November 30, 1998, petitioner's application for a rehearing in Texas not having been decided, she commenced the instant proceeding in Ulster County Family Court seeking custody of Erica. She also simultaneously filed a family offense petition containing allegations of domestic violence against respondent and seeking an order of protection. Although not contained in the record, it is undisputed that Family Court issued an order granting a temporary order of protection and awarding petitioner temporary custody. Family Court also appointed a Law Guardian to represent Erica. On December 4, 1998, petitioner filed a motion in Texas to transfer "the custody proceeding" to Ulster County.

On January 4, 1999, respondent petitioned in Family Court for enforcement of the Texas order and also sought dismissal of the instant proceeding on the alternative grounds that Family Court lacked subject matter jurisdiction and forum non conveniens.[2] The parties also appeared before Family Court on that date. The temporary order of protection was continued and

---

2. Also on this date, petitioner filed a violation petition accusing respondent of violating the order of protection. Less than three weeks later, on January 22, 1999, respondent filed a petition in Texas seeking enforcement of the divorce decree, which resulted in a March 12, 1999 Texas order of contempt against petitioner.

visitation between respondent and Erica was scheduled for that night. Shortly thereafter, petitioner's motions for a rehearing and transfer were denied by the Texas court.

On March 23, 1999, Family Court denied respondent's motion to dismiss the petition, a decision fully supported by the Law Guardian. In a thorough decision, the court reviewed the various bases for securing jurisdiction under the Uniform Child Custody Jurisdiction Act (Domestic Relations Law art 5-A [hereinafter UCCJA]) and determined that Texas did not have subject matter jurisdiction over the custody issue as of the December 30, 1997 commencement of the divorce action. It further found that, even if Texas originally had jurisdiction, it lost this status when New York was established as Erica's new home state. Finally, Family Court denied respondent's alternative request to dismiss on forum non conveniens grounds and ordered that the matter should be scheduled for a trial as soon as practicable. Respondent appeals.[3]

We begin by noting that the record in this matter of such profound importance is sparse. In addition, the record contains no evidence that any court of any State has yet held a full fact-finding custody hearing at which both parties were physically present, represented by counsel, given an opportunity to present testimony and cross-examine witnesses and at which Erica and her best interests were represented by an attorney. We further point out that the record lacks any indication concerning the *basis* for the Texas court's purported custody determination other than the mere assertion in the divorce decree that, "having considered the circumstances of the parents and of the child, [the court] finds the following orders are in the best interest of the child."[4]

---

**3.** To the extent that petitioner contends that respondent is not entitled to an appeal as of right because the determination to exercise jurisdiction is not a "dispositional order" within the meaning of Family Court Act § 1112 (a) (*see, Matter of Holtzman v Holtzman*, 47 AD2d 620, 620-621), we chose, in the exercise of our discretion, to treat the notice of appeal as a request for permission to appeal and review the issue (*see,* Family Ct Act § 1112 [a]; *see, e.g., Matter of Elacqua [Tiffany DD.] v James EE.*, 203 AD2d 688; *Matter of Maryanne PP. v Richard QQ.*, 192 AD2d 747, 748, n *). As to respondent's appeal of the denial of his petition seeking enforcement of the Texas order, the issue is squarely before us (*see,* Family Ct Act § 1112 [a]).

**4.** Concerned with these facts, and further troubled by the allegations of domestic violence against respondent which have never been explored in any judicial forum, we are convinced that, even in the absence of a finding that Texas lacked subject matter jurisdiction as of December 30, 1997, it would nevertheless be in the best interest of this now 3½-year-old child, who has

Moreover, before specifically addressing the propriety of Family Court's finding that Texas did not have subject matter jurisdiction under the UCCJA (*see*, Domestic Relations Law § 75-d [1]), we are also compelled to comment briefly on respondent's contention that petitioner allegedly never questioned the Texas court's jurisdiction to decide custody. While petitioner appeared by counsel in the Texas divorce proceeding and did not contest personal jurisdiction, she could not consent to or waive the subject matter jurisdiction of that court to decide the *custody* dispute (*see*, *Koshetz v Lamberti*, 262 AD2d 611; *Gomez v Gomez*, 86 AD2d 594, *affd* 56 NY2d 746; *Eckert v Eckert*, 34 AD2d 684; *Jefferson v Downs*, 107 Misc 2d 852, 854; *Schaeffer v Schaeffer*, 101 Misc 2d 118, 120; *see also*, CPLR 3211 [e]). As noted in *Koshetz v Lamberti* (*supra*, at 611), "[a]s subject matter [jurisdiction] relates to the competence of a court to hear a matter, the requirements of UCCJA cannot be waived by the parties by agreement." Texas courts have similarly held. As aptly noted in *In re Powers* (974 SW2d 867, 870 [Tex App]), "[u]nlike adjudications of child support, custody determinations are status adjudications not dependent upon personal jurisdiction over the parents" (*see*, *Abderholden v Morizot*, 856 SW2d 829, 832 [Tex App]). The Texas court further noted, "[s]ubject matter jurisdiction cannot be conferred by consent, waiver or estoppel at any stage of a proceeding" (*In re Powers, supra*, at 871; *see generally*, *Dubai Petroleum Co. v Kazi*, 12 SW3d 71, 76 [Tex Sup Ct]).

We next find that Family Court correctly disposed of the primary issue before it, namely, whether Texas had subject matter jurisdiction over the parties' much traveled 6½-month-old child as of December 30, 1997. We agree with Family Court's conclusion that Texas did not have subject matter jurisdiction over the issue of the custody of Erica—who was born in Germany and lived in Texas for less than eight weeks when she was 6½ months old—and therefore the court was not required to give full faith and credit to that portion of the parties' divorce decree which purported to resolve this issue. Accordingly, we affirm.

First, Texas never possessed jurisdiction to determine the issue of Erica's custody because it was not her "home state" as that term is defined under the UCCJA and under the Parental Kidnaping Prevention Act ([hereinafter PKPA] *see*, 28 USC

---

been cared for exclusively by petitioner for over 2½ years, for Family Court to exercise jurisdiction and conduct a full fact-finding hearing (*see*, *Matter of Van Houten v Van Houten*, 156 AD2d 694, 695).

§ 1738A [c] [2] [A]; *compare*, Domestic Relations Law § 75-d [1] [a], *with* Tex Fam Code Annot former § 152.003 [a] [1]). The home state of a child older than six months, such as Erica on December 30, 1997, is defined as "the state in which the child at the time of the commencement of the custody proceeding, has resided with his parents * * * *for at least six consecutive months*" (Domestic Relations Law § 75-c [5] [emphasis supplied]).[5] Although Erica never resided in Texas for the requisite six months, respondent argues that Erica acquired Texas as her home state upon the parties' return to the United States in May 1997. We disagree.

Significantly, a child does not necessarily have a "home state" and, in our view, Erica had no home state upon the parties' return to the United States until she lived in *one* State for the requisite six-month period (*see, McDaniel v McDaniel*, 262 AD2d 1066; *In re Lambert*, 993 SW2d 123 [Tex App]; *see also, Warshawsky v Warshawsky*, 226 AD2d 708; *Evans v Evans*, 208 AD2d 223, 227; *Mazur v Mazur*, 207 AD2d 61, *lv denied* 85 NY2d 803; *Matter of Wilber v Buelow*, 136 AD2d 786, 787; *Matter of Rivera v Santiago*, 174 Misc 2d 255, 257-258; Sobie, Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law § 75-c, at 332-334). Indeed, when respondent commenced the divorce proceeding in December 1997, Erica had lived in Texas for only an eight-week period *five months beforehand*, had lived in Arizona for five months and had been in Florida for a matter of days. Thus, she had no *home state* for the purposes of the UCCJA.

Respondent opines that because the "parties" chose Texas to be their legal residence and domicile—i.e., they registered a truck in petitioner's name in that State upon returning to this country and filed their 1996 tax returns there—Texas was therefore Erica's "home state." Although an adult does not gain or lose a domicile or residence by serving in the military (*see, Zimmerman v Mingo*, 171 AD2d 662) and although a child's legal residence is generally that of the parents (*see, Matter of Thorne*, 240 NY 444, 449; *Matter of Nicole JJ. [Barbara KK.]*, 265 AD2d 29, *lv denied* 95 NY2d 757), the determination of a child's *home state* under the UCCJA and PKPA is separate and distinct from the determination of either the parents' or the child's legal residence (*see, Matter of Rivera v Santiago, supra*, at 259; *see also, McCabe v McCabe*, 600 So 2d 1181, 1185-1186

---

**5.** This definition is substantially identical to that outlined under both Texas Family Code Annotated former § 152.002 (6) and 28 USC § 1738A (b) (4).

[Fla]; *Jackson v Jackson*, 390 So 2d 787, 790 [Fla]; *Hangsleben v Oliver*, 502 NW2d 838, 843 [ND]; *Harper v Landers*, 180 Ga App 154, 157, 348 SE2d 698, 701; *Fletcher v Fletcher*, 20 Ark App 190, 193, 726 SW2d 684, 686). Moreover, while temporary absences from the forum State are to be counted as part of the requisite six-month period for home state jurisdiction purposes (*see*, 28 USC § 1738A [b] [4]), we are not satisfied that the time period in which Erica spent in Arizona was a temporary absence from *Texas*. Having temporarily lived in Texas for only two months, the parties relocated to Arizona pursuant to a military assignment for an *indefinite* period of time and functioned as a family unit in that State; indeed, respondent continues to reside there to this day (*see*, *L. H. v Youth Welfare Off.*, 150 Misc 2d 490, 497; *compare*, *Lemley v Miller*, 932 SW2d 284, 287 [Tex App]).

Moreover, Texas lacked jurisdiction on each of the alternative grounds set forth under the UCCJA and PKPA. First, Erica did not have a "significant connection" with Texas to support jurisdiction nor was there *any* evidence, let alone "substantial evidence," concerning her present or future care, protection, training and personal relationships in *that* State (Domestic Relations Law § 75-d [1] [b]; *see*, Tex Fam Code Annot former § 152.003 [a] [2]; 28 USC § 1738A [c] [2] [B]; *cf.*, *People ex rel. Stover v Stover*, 112 AD2d 519, 520-521). To this end, the Court of Appeals has noted that to establish a significant connection "[m]aximum rather than minimum contacts with the State are required" (*Vanneck v Vanneck*, 49 NY2d 602, 610). Additionally, Erica was not physically present in Texas at the time of commencement of the divorce proceeding (*see*, Domestic Relations Law § 75-d [1] [c]; Tex Fam Code Annot former § 152.003 [a] [3]; 28 USC § 1738A [c] [2] [C]) and it was never determined whether any other State would have jurisdiction or that another State declined jurisdiction (*see*, Domestic Relations Law § 75-d [1] [d]; Tex Fam Code Annot former § 152.003 [a] [4]; 28 USC § 1738A [c] [2] [D]). As of December 30, 1997, *Arizona*, as opposed to any other State at that time, would have had jurisdiction over the issue of Erica's custody. The parties and, more importantly, Erica had lived there for five months, the most time anywhere since their return to this country (*see*, *In re Lambert*, 993 SW2d 123, *supra*).

Because Texas could not exercise jurisdiction "substantially in conformity" with the UCCJA or consistent with the PKPA (*see*, 28 USC § 1738A [a], [c] [2]), Family Court was not

required to recognize the custody provision in the Texas divorce decree (*see*, *Matter of Wilber v Buelow*, 136 AD2d 786, 787, *supra*; *see also*, 28 USC § 1738A [a]; Domestic Relations Law §§ 75-n, 75-*o*), and, although it would have been preferable, it was not fatal for it to have exercised its own jurisdiction without consulting with the Texas court (*see*, *Kilcullen v Bubanj*, 116 AD2d 470, 471). To the extent that respondent relies on *Vanneck v Vanneck* (*supra*) for the proposition that Family Court, in making its determination, had a duty to stay its own proceedings and communicate with the Texas court to exchange information, it is important to note that the Court of Appeals limited its decision in that case to those instances where the foreign court had at least a colorable claim to jurisdiction over a custody issue (*see*, *id.*, at 609-610), a factor lacking in this case. Indeed, the Court of Appeals specifically stated: "We need not decide whether the pendency of a proceeding in a forum *totally lacking a jurisdictional predicate* would mandate that a New York court suspend its action for purposes of communicating with the other court" (*id.*, at 610 [emphasis supplied]). We note finally that New York has jurisdiction as Erica's "home state" to decide the instant custody determination since at the time of commencement of the subject proceeding petitioner and Erica had been residing here for over six months (*see*, Domestic Relations Law § 75-d [1] [a] [i]; § 75-c [5]).

Respondent's remaining contentions, to the extent not discussed, have been reviewed and rejected as without merit.

PETERS, J. (dissenting). Both the Uniform Child Custody Jurisdiction Act (Domestic Relations Law art 5-A [hereinafter UCCJA]) and the Parental Kidnaping Prevention Act (hereinafter PKPA) were enacted with the declared purpose of deterring abductions and other unilateral removals of children to obtain custody awards. They sought to avoid jurisdictional competition and relitigation of custody decisions of other States, all the while promoting the exchange of information and mutual assistance between courts for a further facilitation in the area of enforcement when presented with custody decrees of sister States (*see*, Domestic Relations Law § 75-b; Pub L 96-611, §§ 7, 8 [c], 94 US Stat 3569; *see also*, *Matter of Ricky D. C. v Carol A. C.*, 139 Misc 2d 826, 832-833). Although Texas has adopted the UCCJA (Tex Fam Code Annot former §§ 11.51—11.75, recodified at Tex Fam Code Annot former

§ 152.001 *et seq.* [Vernon 1996]),[1] the PKPA will preempt the UCCJA under the Supremacy Clause of the US Constitution (*see, Matter of Mott v Patricia Ann R.*, 236 AD2d 819, 820, *affd* 91 NY2d 856).

Viewed as an initial custody determination, the UCCJA clearly details that when a New York court has reason to believe that a custody petition is pending in another State, notwithstanding any claim of jurisdictional superiority "the court 'shall stay [its own] proceeding and communicate with the court in which the other proceeding is pending to the end that the issue may be litigated in the more appropriate forum and that information be exchanged in accordance with sections seventy-five-s through seventy-five-v of this article' " (*Vanneck v Vanneck*, 49 NY2d 602, 609-610, quoting Domestic Relations Law § 75-g [3]). The purpose of such communication is to garner information to assess whether the other State court was "exercising jurisdiction substantially in conformity" with the UCCJA (Domestic Relations Law § 75-g [1]). In that vein, we agree with the majority that Erica did not have a "home State"—as that term is defined and applied under both the UCCJA (*see*, Domestic Relations Law § 75-c [5]; § 75-d [1] [d] [i]; Tex Fam Code Annot former § 152.002 [6]; § 152.003 [a]) and the PKPA (*see*, 28 USC § 1738A [b] [4]; [c]) as of December 30, 1997—on the date respondent commenced the divorce proceeding in Texas, since Erica was living in Florida and had not resided in any State for the requisite six-month period. Nonetheless, Texas had a jurisdictional predicate for exercising custody under the PKPA (*see*, 28 USC § 1738A [c] [2] [D]) and the UCCJA (*see*, Tex Fam Code Annot former § 152.003 [a] [4]). Those statutes permit it to exercise jurisdiction, as it did, whenever it appears that no other State would be able to do so and it is in the best interest of the child for the court to assume jurisdiction (*see, In re Lambert*, 993 SW2d 123 [Tex App]; *see also, McDaniel v McDaniel*, 262 AD2d 1066).

Contrary to the contention raised by the majority, we do not condone a principle of waiver as to the issue of subject matter

---

1. In 1997, a successor code to the UCCJA entitled the Uniform Child Custody Jurisdiction and Enforcement Act (hereinafter the UCCJEA) was promulgated to amend the UCCJA predominantly in the area of enforcement. It further seeks to conform to the provisions of the PKPA (*see*, Sobie, Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law § 75-b, at 323). New York has not yet adopted the new legislation. In 1999, Texas repealed the UCCJA and adopted the UCCJEA (Acts 1999, 76th Leg, ch 34, § 1, 1999 Tex Gen Laws 52 [codified at Tex Fam Code Annot § 152.001 *et seq.*]); the UCCJA is, however, controlling in this case.

jurisdiction. The propriety of the Texas court's exercise of jurisdiction was simply buttressed by the parties' continued appearance in such court. Had petitioner defaulted in the Texas matrimonial action (*see, Fletcher v Fletcher*, 20 Ark App 190, 726 SW2d 684) or challenged the authority of the Texas court to grant custody in the first instance by filing a special appearance (*see, Lemley v Miller*, 932 SW2d 284 [Tex]), her subsequent contention that Texas was without jurisdiction to determine custody would not seem so disingenuous. Hence, as the Texas court had a jurisdictional basis upon which it made a determination of custody, the absence of any communication from the New York court, a stay of its proceeding or deference of the matter to Texas, mandates our conclusion that Family Court failed to follow statutory mandates and, instead, assumed jurisdiction. Even applying the threshold noted by the majority to force inquiry with an originating court, in our view Family Court erred in failing to find even a "colorable claim" to jurisdiction (*see, Vanneck v Vanneck*, 49 NY2d 602, *supra*).

Turning to the issue of modification, we remain unable to find any viable basis upon which Family Court could have exercised jurisdiction. The PKPA provides that the jurisdiction of the Texas court which made the initial custody determination consistent with the provisions of its article will continue so long as it has jurisdiction under its own laws and the State "remains the residence of the child or of any contestant" (28 USC § 1738A [d]). Despite respondent's military status affecting his physical locale, he is deemed to continue to reside in Texas (*see*, 28 USC § 1738A [c] [2] [A]) and was granted the right, by the initial decree of the Texas court, to designate the residence of the child. Although Family Court read the Texas statute as relinquishing the ability to modify its own custody order once a new home state was created, our review of Texas law reveals that a court is prohibited from exercising jurisdiction to modify custody under these circumstances "unless the action was filed before the new home state was acquired or all parties acquiesce in writing" (*Phillips v Beaber*, 995 SW2d 655, 657 [Tex]; *see*, Tex Fam Code Annot former § 152.003 [d]). Since the Texas proceeding was filed before New York became the child's home State, we believe that Texas has continuing jurisdiction under its law.[2]

Nor can we find that the Texas court intended to relinquish its ability to modify its prior custodial order. The record makes

---

**2.** Notably, even petitioner's attorney acknowledged that Texas had continuing jurisdiction in the affidavit he submitted in support of the transfer motion.

clear that by the terms of the Texas order, respondent was the parent entitled to physical custody of this child yet the child was removed by petitioner to New York and stayed there in derogation thereof. Evidenced by its State statutes, the PKPA and by the further orders issued after the commencement of proceedings in New York, Texas clearly communicated its intent to retain jurisdiction notwithstanding the noncustodial parent's refusal to produce the child.

Overriding policy considerations both in the PKPA and UCCJA demand that jurisdiction in New York be declined because of petitioner's wrongful conduct in not only precluding access to the child prior to a final decree in Texas, but also in continuing to disregard lawful court orders of the Texas courts once issued (see, Domestic Relations Law § 75-i). Despite the characterization by the majority of petitioner as a native New Yorker who simply returned to be with her extended family, we note that the record fails to include any such information pertaining to petitioner's background. Thus, to the extent that the majority seeks to implicitly equate her "return" to New York with respondent's residency in Texas where his family resides, we find it unsupportable.

While we assertively argue for a reversal of Family Court's order, we are uncomfortable with the result we champion. But, constrained by principles embodied in the UCCJA and PKPA, we see no other viable conclusion. Nonetheless, we recognize that New York has acquired substantial evidence concerning this child's current and future care, protection, training and personal relationships. Thus, we would not simply dismiss the proceedings without at least offering Texas timely access to that information through the provision of auxiliary services. Instead, we would reverse the order and remit this matter to Family Court with a direction that it stay all proceedings and immediately convey an offer to aid the Texas court to obtain any relevant information it desires concerning the well-being of this child. If the Texas court declines the offer, Family Court should dismiss the petitions.

MERCURE and SPAIN, JJ., concur with CARPINELLO, J.; PETERS, J., and CARDONA, P. J., dissent in a separate opinion by PETERS, J.

Ordered that the order is affirmed, without costs.