OPINION OF THE COURT
Lawrence H. Ecker, J.
Petitioner B.B. makes application for a writ of habeas corpus that respondent A.B. produce the parties’ infant child, EB., in this court.[1]
Upon review of the parties’ respective submissions, and having heard oral argument on February 17, 2011, the court makes the following findings of fact:
The parties were married on August 18, 2007 in South Lake Tahoe, California. Thereafter, they resided together in Orange County, New York. On November 28, 2010, respondent moved out of the marital residence. She was approximately seven months pregnant at the time. On December 2nd, she filed a family offense petition in Family Court, Orange County and was granted an ex parte temporary order of protection against petitioner. On December 7th, through her attorney, she notified the Family Court that she was withdrawing the family offense petition which had not as yet been served upon petitioner, and that she was “leaving for the holidays with her family.” (Petitioner’s exhibit B.) That same day, she left New York and returned to her parents’ home in Alexandria, Minnesota. She wrote to petitioner she would be back by January 1st or 2nd with her parents. (Petitioner’s exhibit A.) Respondent did not *610 return home to the marital residence after the holidays as she had previously indicated. Petitioner thereupon commenced an action for divorce in this court on January 4, 2011 by filing a summons with notice stating “Action for Divorce.”[2]
The infant child, F.B. was born on January 29, 2011 in Douglas County Hospital in Alexandria, Minnesota. The instant writ of habeas corpus was issued by this court on February 1, 2011, and made returnable on February 15th. The writ was adjourned on consent to February 17th, on which date both counsel and petitioner appeared and oral argument was held.[3] The court waived the appearance of the infant who was only several days old when the writ was issued, and had developed some health issues. In the meanwhile, on February 11th, respondent filed a petition in District Court, Seventh Judicial District, Douglas County, Minnesota, for legal and physical custody, child support, and to schedule parenting time for petitioner.
The issues in this case are as follows:
1. Does a petition for a writ of habeas corpus confer subject matter jurisdiction upon this court to adjudicate the parties’ custody dispute when the child was outside the State of New York when the petition was filed?
2. Assuming this court does have subject matter jurisdiction, is New York or Minnesota the “home state,” as that term is defined in section 75-a (7) of article 5-A of the Domestic Relations Law, popularly known as the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA).[4]
As to the first issue, respondent challenges the appropriateness of habeas corpus in this case, relying on the explicit language in Domestic Relations Law § 70 (a) authorizing a parent to petition for a writ of habeas corpus “[wjhere [the] minor child is residing within this state.” There is a paucity of authority as to whether the child in question must be located in this state when the application for a writ of habeas corpus is made. A Practice Commentary to Domestic Relations Law § 70 by Justice Alan D. Scheinkman notes that although the statute explicitly requires the child who is the subject of the proceeding be “residing in this state,” “the modern view” is the presence *611 of the child in this state is not a prerequisite, at least when the disputing adults are subject to the jurisdiction of the court. (Scheinkman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law C70:2, at 277 [2010].)
Justice Scheinkman goes on to state:
“Indeed, New York’s version of the Uniform Child Custody Jurisdiction and Enforcement Act provides that its provisions are the exclusive jurisdictional basis for making a child custody determination by a court of this state and that physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child custody determination. Domestic Relations Law § 76 (subds. 2, 3); see also Family Court Act, § 651 (subd. b) (Family Court’s power to entertain an application for a writ of habeas corpus is not confined to situations where the child is ‘residing’ in this State.” (Id.; see also Scheinkman, New York Law of Domestic Relations § 23:18 [11 West’s NY Prac Series 2009].)
Here, the court finds subject matter jurisdiction over the parties predicated upon the prior filing of the summons with notice by petitioner, in which the jurisdictional requisites, as set forth in Domestic Relations Law § 230, were presumably satisfied. Had petitioner proceeded by order to show cause instead of invoking the writ of habeas corpus, the court no doubt would have subject matter jurisdiction over the custody issue once the child was born. Thus, the court views respondent’s challenge to the remedy of habeas corpus used by petitioner in bringing the issue of custody to the immediate attention of the court to be a matter of form over substance. Accordingly, the court determines that subject matter jurisdiction has been properly obtained.
As to the second issue, i.e., whether New York or Minnesota is the “home state” of this very young infant, the determination of a child’s “home state” is of critical importance. The resolution of the issue of “home state” must be made by the court, as contemplated by the UCCJEA (Domestic Relations Law art 5-A). There must be an appropriate finding as to which state is the appropriate jurisdiction for ruling upon initial applications (and modifications) of custody and visitation of a child.
Domestic Relations Law § 75-a (7) defines “home state” as follows:
“ ‘Home state’ means the state in which the child lived with a parent or a person acting as a parent *612 for at least six consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period.”
In most cases, a less-than-six-month-old child achieves “home state” status upon birth. However there remains the issue when the child and parent relocate during the initial six months (not present here), or the child is born in a state where neither parent resides, as petitioner contends has occurred here. This issue has yet to be addressed in New York.
In arguing that New York is the infant’s “home state,” petitioner principally relies on In re D.S. (217 Ill 2d 306, 840 NE2d 1216 [2005]) for the principle that crossing state lines to give birth to a child does not, in and of itself, allow a finding that the child is now a resident of the state where the delivering hospital is located. In In re D.S., the mother traveled to Indiana just two days prior to the day she delivered her seventh child. At the time, her six other children were the subject of child protective proceedings in Illinois. The court found her sojourn to Indiana to be an attempt on her part to evade the jurisdiction of the Illinois authorities to intercede on behalf of the newborn, whose siblings were already subject to the supervision and control of the Illinois authorities.
Petitioner cites In re D.S. (supra) in support of his position that “home state” jurisdiction requires more than the mother and newborn child staying at the same hospital for a brief period. There, the Illinois Supreme Court held that a temporary hospital stay incident to delivery is insufficient to confer “home state” jurisdiction under the UCCJEA, notwithstanding the literal language establishing a “living from birth” rule for a child less than six months old. Thus, petitioner argues New York is the “home state” of the infant based upon the length of time the parties resided here prior to the infant’s birth,[5] coupled with respondent’s perhaps surreptitious departure from New York approximately seven weeks prior to the infant’s birth. To state it differently, petitioner contends the fact the infant was born in a Minnesota hospital does not deprive New York of jurisdiction to adjudicate issues of custody and visitation.
*613 Respondent posits that Minnesota is the “home state” because the child, who is less than six months old, lived in Minnesota at the moment of birth, continued to live in Minnesota as of the date of the issuance of the writ, and remains a resident of Minnesota, predicated upon respondent’s own conduct since arriving there. It should be noted that Alexandria, Minnesota is respondent’s hometown. Notwithstanding her early December letter indicating a return date to New York of January 1st or 2nd (petitioner’s exhibit A), she denies she was merely visiting Minnesota and had the baby during a visit. Rather, she states in her affidavit she returned to Minnesota to have the support of her family and friends in her hometown.
In further support of her claim, respondent states she has taken steps to legally change her address, applied for a Minnesota driver’s license, applied for a Minnesota teaching license, found an obstetrician and a pediatrician for the child, and is looking for employment.[6] She and the infant currently reside with her parents, where she has been living since arriving in Minnesota in early December. (Respondent’s aff paras 14-19.)
In In re D.S. (supra), the court rejected the mother’s claim that Indiana was the “home state” and held the word “lived” requires more than a brief period of hospitalization. It held that allowing a temporary hospital stay to confer “home state” jurisdiction would undermine the public policy goals of the UCCJEA, and thereby refused to endorse the “living from birth” rule on those facts. The instant case is readily distinguishable from In re D.S. in light of this respondent’s connections to Minnesota, both in the past and the immediate present.
The court is mindful that petitioner could not bring on his application until the child was born, and that prior to that date, he could not compel respondent to return to the marital residence.[7] The court is also cognizant that litigating the issue of custody/visitation in Minnesota will be expensive and incon *614 venient to the petitioner. Nevertheless, the statutory, interstate compact that has been adopted by New York and Minnesota (and every other state in this nation) is intended to provide consistency and stability arising under these unfortunate circumstances. It is an axiom of statutory construction that the legislative intent is to be ascertained from the language used, and that where the words of a statute are clear and unambiguous, they should be construed literally (McKinney’s Cons Laws of NY, Book 1, Statutes §§ 76, 94). This court cannot overlook the clear and unambiguous language in Domestic Relations Law § 75-a (7) that “home state,” when applied to a child less than six months old, is defined as “the state in which the child lived from birth with any of the persons mentioned.” The court finds, based upon the totality of the circumstances, the infant’s “home state” is Minnesota.[8]
Notwithstanding where the equities in this case may lie, which the court is constrained to disregard, petitioner’s application for a writ of habeas corpus, requiring the return of the parties’ infant child, F.B., born January 29, 2011, from the State of Minnesota to the State of New York, is hereby denied, and the petition is dismissed.

. The petitioner B.B. is also the plaintiff in an action for divorce filed in this court in which the defendant is the respondent A.B.

. Included in the items of relief was an adjudication of custody and visitation as to the yet unborn child.

. The court excused respondent’s appearance for health-related reasons.

. Both New York and Minnesota are signatories to the UCCJEA.

. The child here is the parties’ first born.

. Subsequent to oral argument, and in response to petitioner’s attorney questioning the lack of documentation regarding respondent’s claims of establishing residency in Minnesota, respondent’s attorney, via fax, submitted what she claims to be corroborating documentation that should have been included in the initial submission. The court has not given any consideration to this late submission.

. Respondent has asserted she left New York to seek refuge at her parents’ home in Minnesota due to an incident of domestic violence that occurred in November 2010. Petitioner has vehemently denied that such an incident took place and avers that it was respondent who was the aggressor. These allegations have not played a part in the court’s determination.

. Petitioner will presumably be afforded the opportunity to raise all custody and visitation issues in tbat state.