■ In the Matter of DESTINY EE., a Child Alleged to be Permanently Neglected. ULSTER COUNTY DEPARTMENT OF SOCIAL

SERVICES, Respondent; KAREN FF., Appellant. (Proceeding No. 1.) In the Matter of BRANDON EE., a Child Alleged to be Permanently Neglected. ULSTER COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; KAREN FF., Appellant. (Proceeding No. 2.) In the Matter of NIGAL FF., a Child Alleged to be Permanently Neglected. ULSTER COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; KAREN FF., Appellant. (Proceeding No. 3.) (And Three Other Related Proceedings.) [936 NYS2d 703]—

Garry, J.

Respondent is the mother of two sons (born in 1997 and 2000) and a daughter (born in 2003). In 2001, petitioner commenced abuse and neglect proceedings against respondent and her husband arising out of the husband's sexual abuse of the older son; both sons were removed from their custody.[1] Respondent subsequently consented to a finding of neglect based on, among other things, her admission that she should have known of the abuse. The husband absconded, and Family Court issued a warrant for his arrest, which was never executed. Following an inquest held in the husband's absence, Family Court determined that he had sexually abused the older son and had neglected both sons, and issued orders of protection as to both children; the order applicable to the older son extended until his 18th birthday. In July 2003, the sons were returned to respondent's custody. Petitioner continued to provide services and supervision until approximately June 2005, when the proceedings were closed. Respondent thereafter took the children to Wisconsin, where they lived for approximately 18 months before returning to New York.

In June 2007, approximately one month after her return to New York, respondent filed a custody petition alleging that the younger son was visiting the husband in Mississippi, the husband was "doing drugs" and drinking, the husband's girlfriend had hit the younger son with a belt, and the husband had refused respondent's request to return him to her custody. On the day that this custody petition was filed, petitioner ap-

---

1. The husband is the father of the younger son and was the older son's stepfather at the time of the abuse.

plied, pursuant to Family Ct Act § 1022, for temporary removal of respondent's children on the ground that she had sent the younger son to visit the husband despite her knowledge of his sexual abuse of the older son. After a two-day hearing, the court found that it had jurisdiction, ordered the removal of the children, and placed them in petitioner's temporary custody. The court also vacated the 2001 warrant against the husband and issued a new warrant for his arrest. The younger son was thereafter returned to New York. Petitioner commenced neglect proceedings as to each of the children and, following respondent's admission that her actions constituted neglect, the court placed the children in petitioner's custody.[2] In 2009, petitioner commenced proceedings seeking termination of respondent's parental rights as to all three children. Respondent moved to dismiss the petitions and requested vacatur of the 2007 neglect determination and return of the children to her custody. Family Court denied the motion in its entirety, and respondent appeals.

Respondent contends that dismissal and vacatur are required because Family Court lacked jurisdiction over the temporary removal and neglect proceedings under Domestic Relations Law article 5-A, known as the Uniform Child Custody Jurisdiction and Enforcement Act (hereinafter UCCJEA).[3] The UCCJEA controls as to jurisdiction here, as in all matters falling within the statutory definition of "[c]hild custody proceeding[s]" (Domestic Relations Law § 75-a [4]; see Matter of Kali-Ann E., 27 AD3d 796, 797 [2006], lv denied 7 NY3d 704 [2006]). The provisions were enacted to "provide[ ] a mechanism for enforcing orders of custody and visitation across state lines" and to prevent jurisdictional competition in custody proceedings (Matter of Evanitsky v Evans, 81 AD3d 1086, 1087 [2011]; see Matter of Michael McC. v Manuela A., 48 AD3d 91, 95 [2007], lv dismissed 10 NY3d 836 [2008]; see also Vanneck v Vanneck, 49 NY2d 602, 608 [1980]). Here, no jurisdiction other than New York has ever issued custody determinations affecting the subject children, nor have any applications for such determinations been made elsewhere. We find that Family Court properly determined that it had jurisdiction over the 2007 proceedings.

The UCCJEA establishes specific grounds as the basis for

---

**2.** These proceedings have been the subject of two prior appeals (Matter of Destiny EE. [Karen FF.], 82 AD3d 1292 [2011]; People ex rel. Karen FF. v Ulster County Dept. of Social Servs., 79 AD3d 1187 [2010]).

**3.** Respondent's jurisdictional objection was not waived "as subject matter jurisdiction relates to the competence of a court to hear a matter" and cannot be conferred by agreement or waiver (Matter of Consford v Consford, 271 AD2d 106, 110 [2000] [internal quotation marks, brackets and citation omitted]; see Arnold v Harari, 4 AD3d 644, 646 [2004]).

initial child custody jurisdiction, including, among others, that "this state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state" (Domestic Relations Law § 76 [1] [a]). The home state is defined as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding" (Domestic Relations Law § 75-a [7]). In certain circumstances, children do not have home states (*see Matter of Consford v Consford*, 271 AD2d 106, 111 [2000]). Respondent's children did not have a home state when the temporary removal proceedings were commenced, as they did not live in Wisconsin immediately before the proceedings were commenced and had not yet lived in New York for the requisite six months (*see* Domestic Relations Law § 75-a [7]; Sobie, Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law § 76, at 458). Although Wisconsin had been the children's home state within the previous six months, it did not have jurisdiction when the removal application was filed because no "parent or person acting as a parent" was residing there (Domestic Relations Law § 76 [1] [a]; *see* § 76 [1] [b]).

Respondent now claims that the family's stay in New York was intended to be a "temporary absence" (Domestic Relations Law § 75-a [7]; *see Arnold v Harari*, 4 AD3d 644, 646-647 [2004]), that Wisconsin was still the children's home state, and that she was still a Wisconsin resident.[4] However, the record does not support this claim. "Jurisdictional facts must be demonstrated to the court's satisfaction 'in the first instance' and whatever may occur after the jurisdictional question is determined is irrelevant to that issue" (*Gomez v Gomez*, 86 AD2d 594, 595 [1982], *affd* 56 NY2d 746 [1982], quoting *Vanneck v Vanneck*, 49 NY2d at 608). The jurisdictional analysis here thus depends upon the facts presented to Family Court when petitioner filed the emergency removal application in June 2007.

At that time, the record included respondent's sworn statements in her custody petition providing New York addresses for herself and the younger son, alleging that the younger son had lived in New York since May 2007, seeking his return to New York, and giving no indication that either respondent's presence

---

4. The determination of a child's home state does not depend on the legal residence of the parent or the child; the two analyses are "separate and distinct" (*Matter of Consford v Consford*, 271 AD2d at 111).

in New York or that of her children was temporary. Respondent and the older son also made several statements indicating that the family had relocated permanently to New York; among other things, respondent told petitioner's caseworkers that she sent the younger son to Mississippi in part to make it easier to get settled after the move, and the older son stated that the family had moved from Wisconsin because of conflict between respondent and the maternal grandmother. During the removal hearing, respondent made no claim that her stay in New York was temporary, nor did she produce any evidence of continued residence in Wisconsin such as a permanent address or an anticipated date of return. Accordingly, the record before Family Court fully supported a determination that neither respondent nor her children still resided in Wisconsin and that their presence in New York was not temporary (compare Matter of Felty v Felty, 66 AD3d 64, 70 [2009]; Arnold v Harari, 4 AD3d at 646-647). We accord deference to the court's resolution of the credibility of respondent's subsequent claims—not raised until after the jurisdictional determination had resulted in the removal of her children and the commencement of neglect proceedings—that the trip to New York had been intended as a vacation and that she was tricked by court personnel into filing her custody petition (see Matter of Joseph RR. [Lynn TT.], 86 AD3d 723, 725 [2011]; Matter of Nicole K. [Melissa K.], 85 AD3d 1231, 1233 [2011]).

Pursuant to Domestic Relations Law § 76 (1) (b), a New York court may exercise jurisdiction, as pertinent here, when no court in another state has jurisdiction, the child and a parent have a "significant connection" with New York, and "substantial evidence is available in [New York] concerning the child's care, protection, training, and personal relationships." Such a connection exists only when "the forum in which the litigation is to proceed has optimum access to relevant evidence. Maximum rather than minimum contacts with the [s]tate are required" (Vanneck v Vanneck, 49 NY2d at 610 [internal quotation marks and citation omitted]; see Matter of Consford v Consford, 271 AD2d at 112).

The removal and neglect proceedings in this matter did not depend primarily upon information or contacts available in Wisconsin, but on the degree of risk posed to respondent's children by her decision to permit the younger son to visit the husband. New York was the only jurisdiction with pertinent information about the husband's previous abuse of the older son, respondent's knowledge of that abuse, and the related risk to her children. The prior proceedings took place in the same Fam-

ily Court where the 2007 proceedings were commenced, extended over a four-year period, and resulted in determinations that the husband had abused the older son—then approximately four years old—by repeated acts of sodomy over an extended period of time, as well as respondent's admission that she knew or should have known of the abuse, and that her failure to protect the older son constituted neglect of both sons. A New York warrant for the husband's arrest was still outstanding at the time of the temporary removal application. At the removal hearing, respondent and the older son were represented by the same attorneys who had represented them throughout the prior proceedings. Petitioner was familiar with respondent and her children, as the sons were in its care between 2001 and 2003, and it had continued to provide supervision and services to the family over the next two years. As to contacts with New York, all three of respondent's children were born here and, except for the 18-month stay in Wisconsin, resided here throughout their lives. The children's previous foster family was still in contact with them; at the emergency removal hearing, respondent's counsel advised the court that the previous foster mother had come to court and was available to act as a resource. Moreover, the record indicates that the fathers of the older son and the daughter reside in New York, although it is unclear whether they have any significant involvement in the children's lives. Accordingly, both the "significant connections" and "substantial evidence" requirements were satisfied. New York was the jurisdiction with optimum access to evidence relevant to the determinations at issue, and Family Court properly exercised jurisdiction under Domestic Relations Law § 76 (1) (b) (compare Warshawsky v Warshawsky, 226 AD2d 708, 709-710 [1996]).

As an alternative basis for jurisdiction, Domestic Relations Law § 76 (1) (d) provides that a New York court may exercise jurisdiction where, as here, "no court of any other state would have jurisdiction under the criteria specified in paragraph (a), (b) or (c) of [Domestic Relations Law § 76 (1)]" (see Sobie, Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law § 76, at 462). Accordingly, we need not address whether New York's "exclusive, continuing jurisdiction" as to the sons resulting from the prior proceedings was severed by respondent's relocation to Wisconsin (Domestic Relations Law § 76-b [1]; see 28 USC § 1738A [d]; compare Matter of Hissam v Mancini, 80 AD3d 802, 803 [2011], lv dismissed and denied 16 NY3d 870 [2011]; see also Brown v Brown, 69 Pa D & C4th 399, 413-414 [2004]; State ex rel. Seaton v Holmes, 100 Ohio St 3d 265, 266-267, 798 NE2d 375, 377-378 [2003]; Maxie v Fernandez, 649 F Supp 627, 631 [ED Va 1986]).

Finally, we reject respondent's contention that vacatur of the 2007 neglect finding was required based upon a recent determination by the Court of Appeals holding that an untreated sex offender's residence in the same home as his minor children, without more, is insufficient to establish an imminent danger to his children or neglect by the mother in allowing him to reside there (*Matter of Afton C. [James C.]*, 17 NY3d 1, 11 [2011]). In that case, no evidence of actual danger to the children other than the sex offender designation was presented, but the Court of Appeals acknowledged that previous crimes against a child in an offender's care might be sufficient to establish such danger (*id.*; *see Matter of Christopher C. [Joshua C.]*, 73 AD3d 1349, 1350-1351 [2010]). In this case, the neglect finding against respondent was supported not only by evidence that the husband had sexually abused a child in his care, but by considerable additional evidence. Respondent was present during the proceedings that led to Family Court's determination that the husband's abuse of the older son "demonstrate[d] such a complete lack of understanding of the responsibilities of parenting that any child in his care would be at serious risk of harm," and issued orders of protection barring him from contact with both sons. She had previously admitted that she had neglected both sons by failing to protect the older son from the husband. When she consented to the 2007 neglect adjudication, respondent acknowledged that, when she sent the younger son to visit the husband in Mississippi, she knew that he had sexually abused the older son and that a warrant for his arrest was outstanding in New York. She further admitted that she knew details of the husband's particular acts of abuse, including, among other things, that he had placed his penis in the older son's anus and caused the older son to perform oral sex on him; she acknowledged that she had seen the older son "humping" the husband and had seen him run from the husband while the husband's pants were down around his legs. Respondent further acknowledged that she did not immediately seek aid in retrieving the younger son from Mississippi, even after the husband refused to return him and after she learned that the husband was using crack cocaine, drinking, and failing to supervise the younger son, that the husband had become so drunk that the younger son could not awaken him, that the husband's girlfriend had spanked the younger son with a belt with his pants down, and that the younger son had helped to search for a gun that became lost in the husband's house. There was thus ample evidence that the husband posed an actual danger to respondent's children and respondent knew of that danger. Family Court properly refused to vacate the 2007 determination that respondent's conduct in

permitting the younger son to visit him constituted neglect of the younger son and derivative neglect of the older son and the daughter.

Spain, J.P., Rose, Kavanagh and Stein, JJ., concur. Ordered that the order is affirmed, without costs.