Matter of Nemes v Tutino (2019 NY Slip Op 03236)





Matter of Nemes v Tutino


2019 NY Slip Op 03236


Decided on April 26, 2019


Appellate Division, Fourth Department


NeMoyer, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on April 26, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: PERADOTTO, J.P., LINDLEY, DEJOSEPH, NEMOYER, AND CURRAN, JJ.


1372.1CAF 18-01161

[*1]IN THE MATTER OF JACLYN H. NEMES, PETITIONER-RESPONDENT,
v
MARK C. TUTINO, II, RESPONDENT-APPELLANT. 
IN THE MATTER OF MARK C. TUTINO, II, PETITIONER-APPELLANT,
v
JACLYN H. NEMES, RESPONDENT-RESPONDENT. 






BETZJITOMIR LAW OFFICE, BATH (SUSAN BETZJITOMIR OF COUNSEL), FOR RESPONDENT-APPELLANT AND PETITIONER-APPELLANT.
CHAFFEE & LINDER, PLLC, BATH (RUTH A. CHAFFEE OF COUNSEL), FOR PETITIONER-RESPONDENT AND RESPONDENT-RESPONDENT.
LORENZO NAPOLITANO, ROCHESTER, ATTORNEY FOR THE CHILD. 


 NeMoyer, J.
 Appeal from an order of the Family Court, Steuben County (Mathew K. McCarthy, A.J.), entered November 15, 2017 in a proceeding pursuant to Family Court Act article 6. The order denied the motion of respondent-petitioner to vacate a prior court order. 
It is hereby ORDERED that the order so appealed from is unanimously reversed on the law without costs, the motion is granted, the order entered February 8, 2017 is vacated, and the petition and cross petition are dismissed.
Opinion by NeMoyer, J.:
Absent an emergency, the New York courts may exercise subject matter jurisdiction in child custody cases only as permitted by Domestic Relations Law § 76 (1). Because Family Court had no such jurisdiction in this case, we reverse.
FACTS
The parties are the biological parents of a male child born in New Jersey on February 18, 2015. Following his birth, the child lived in New Jersey with both petitioner-respondent mother [*2]and respondent-petitioner father. The mother thereafter relocated with the child to Steuben County, New York, and she commenced this proceeding against the father on January 8, 2016 in the Family Court of that county (hereafter, court). In her petition, which sought sole custody of the child, the mother averred that the child was moved from New Jersey to New York on July 15, 2015. Thus, the mother argued, the New York courts had subject matter jurisdiction over this matter because "this state is the home state of the child on the date of the filing of the petition." The father, who still resided in New Jersey, thereafter cross-petitioned under the same index number for shared custody. In his cross petition, the father averred that the child was moved from New Jersey to New York on an unspecified date in August 2015.
The parties appeared before the court on six occasions between February and November of 2016. Throughout the hearings, the father expressed his frustration at, inter alia, the pace of the proceeding and the court's reluctance to fashion a visitation schedule that took account of the distances involved. When the case was called for the seventh time on January 19, 2017, the father did not appear and could not be reached telephonically. The court then dismissed the father's cross petition and granted the mother's petition from the bench. Notably, however, the court took no testimony on the mother's petition.
In its final written order of February 8, 2017, the court, in relevant part, dismissed the father's cross petition "based on his failure to appear"; granted the mother "sole legal custody and physical placement of the minor child"; and granted the father "visitation in New York as the parties agree, not to include overnight visitation." The father's appeal from that order was subsequently dismissed "on the ground that no appeal lies from an order entered upon default" (Matter of Nemes v Tutino, 2017 NY Slip Op 93913[U], *1 [4th Dept 2017]).
The father then moved to vacate the foregoing order, arguing principally that the court lacked subject matter jurisdiction over this proceeding because, at the time of its commencement on January 8, 2016, New York was not the child's "home state" for purposes of the Domestic Relations Law (see CPLR 5015 [a] [4] [authorizing a motion to vacate a judgment or order "upon the ground of . . . lack of jurisdiction"]; see generally Domestic Relations Law § 76 [1]). The balance of the father's motion consisted of complaints about the fairness of the underlying proceedings that are not cognizable grounds for vacatur under CPLR 5015 (a).
The mother opposed the motion to vacate and argued, insofar as relevant to this appeal, that the court had subject matter jurisdiction over this proceeding because:
"[the father's] own facts indicate that, at most, the child was present in the State of New Jersey for five and a half months. Subsequent to that, the child was then present in the State of New York for five and a half months. Based on those facts, it is undisputed that either state could assume jurisdiction as the child, in fact, did not have a home state.' "
The court denied the father's motion to vacate and held, insofar as relevant here, as follows:
"[the father's] claim that the court lacked jurisdiction is raised for the first time in this motion. The subject child had resided in Steuben County[, New York] for approximately half of his young life and [thus New York] was the home state of the child on the date of commencement of the proceeding . . . [The father] failed to raise any jurisdictional issues throughout the numerous appearances prior to the scheduled hearing date and in fact filed his own [custody] application in Steuben [*3]County."
The father appeals, and we now reverse.
DISCUSSION
A
Historically, jurisdiction in custody matters depended upon the physical presence of the child, and courts tended not to credit the custody determinations of other states (see Merril Sobie, Practice Commentaries, Introductory Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law art 5-A at 401-402 [2010 ed] [hereafter Sobie, Practice Commentaries]). Consequently, a parent who was unhappy with a custody determination in one state could retry the case from the beginning by bringing the child to another state (see id.). That created "jurisdictional anarchy" and encouraged parents to adopt a " seize and run' " strategy in custody disputes (id. at 402; see Vernon v Vernon, 100 NY2d 960, 967 [2003] [noting the tendency for " a disgruntled parent . . . to relitigate an adverse custodial de[c]ree in a more hospitable state' "]).
In 1968, the National Conference of Commissioners on Uniform State Laws promulgated the Uniform Child Custody Jurisdiction Act (UCCJA). The Conference's primary motivation was to "avoid jurisdictional competition and conflict with courts of other states in matters of child custody" (Domestic Relations Law former § 75-b [1] [a]). To this end, the Conference proposed a simple framework for determining jurisdiction in custody matters (see former § 75-d [1]). A state would have jurisdiction if, among other bases, it was the "home state" of the child at the commencement of the proceeding or in the preceding months (former § 75-d [1] [a]; see Vanneck v Vanneck, 49 NY2d 602, 609 [1980]). "Home state," in turn, was defined as the state where the child had lived for six months before the proceeding, or, if the child was less than six months old, where he or she had lived since birth (see former § 75-c [5]).
By the early 1980s, each state had adopted the UCCJA (see Sobie, Practice Commentaries at 402). New York adopted the uniform legislation in 1977, in a form "substantially identical" to that proposed by the Conference (id.). The UCCJA framework worked well at first, but its simplicity and comprehensiveness was eroded over the ensuing decades by the Hague Convention on the Civil Aspects of International Child Abduction and a patchwork of preemptive federal legislation addressing custodial interference and child-support enforcement (see Sobie, Practice Commentaries at 402). Consequently, in the late 1990s, the Conference proposed the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) (see Sobie, Practice Commentaries at 404). The UCCJEA has since been enacted in every state except Massachusetts.[FN1]
"While the home state' provision was [already] a basis for establishing jurisdiction in custody proceedings . . . , the newly-enacted UCCJEA elevate[d] the home state' to paramount importance" (Matter of Michael McC. v Manuela A., 48 AD3d 91, 95 [1st Dept 2007], lv dismissed 10 NY3d 836 [2008]). Consistent with that new paradigm, the legislature rewrote Domestic Relations Law § 76 to create one primary and three alternative categories of [*4]jurisdiction in custody cases. Each category is keyed to the child's "home state," which is now defined as either "the state in which a child lived with a parent . . . for at least six consecutive months immediately before the commencement of [the] proceeding" or, "[i]n the case of a child less than six months of age, . . . the state in which the child lived from birth with any [parent]" (§ 75-a [7]). Section 76, together with the defined terms in section 75-a, "forms the foundation of the UCCJEA and governs virtually every custody proceeding" (Michael McC., 48 AD3d at 95).
The primary jurisdictional category of section 76, which is colloquially known as "home state jurisdiction," applies when New York "is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent . . . continues to live in this state" (Domestic Relations Law § 76 [1] [a]). When read in conjunction with the statutory definition of "home state" (§ 75-a [7]), jurisdiction under section 76 (1) (a) attaches when the subject child has resided with a parent in New York either since birth or for the six consecutive months immediately preceding the commencement date of a custody proceeding.
Importantly, once home state jurisdiction has attached in New York under section 76 (1) (a), it continues for six months after the child's permanent departure from New York so long as a parent continues to reside here (see e.g. Matter of Campbell v Campbell, 12 AD3d 669, 669-670 [2d Dept 2004] ["Since New York was the children's home state' within the six months immediately preceding the commencement of this proceeding . . . , and since the father has continued to live in this State, the [New York] Family Court properly exercised home state' jurisdiction"]; compare Matter of Destiny EE. [Karen FF.], 90 AD3d 1437, 1440 [3d Dept 2011], lv dismissed 19 NY3d 856 [2012] ["Although Wisconsin had been the children's home state within the previous six months, it did not have jurisdiction when the . . . application was filed because no parent . . .' was residing there"]). The six-month period of residual continuing jurisdiction preserves the child's last home state as the exclusive judicial forum until a new home state is established, thereby "afford[ing] a resident parent who has been victimized by the removal of a child from the state an opportunity to commence an action in his or her home town. Since the passage of six months is required before any other state may qualify as the new or superceding home state, that parent has a reasonable time to file suit" (Merril Sobie, Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law § 76 at 458 [2010 ed] [hereafter Sobie, Practice Commentaries, Domestic Relations Law § 76]).[FN2]
In contrast to the primary jurisdictional category (home state), the three alternative jurisdictional categories are rarely invoked. Their successful invocation is even rarer (see e.g. McDaniel v McDaniel, 262 AD2d 1066, 1067 [4th Dept 1999]; Warshawsky v Warshawsky, 226 AD2d 708, 709 [2d Dept 1996]; see also Matter of Consford v Consford, 271 AD2d 106, 112 [3d Dept 2000]). Indeed, the three alternative jurisdictional predicates come into play only when another state lacks or waives home state jurisdiction under the uniform criteria established by the UCCJEA and codified in New York as Domestic Relations Law § 76 (1) (a).
The first alternative jurisdictional category applies if "a court of another state does not have jurisdiction under [section 76 (1) (a)], or a court of the home state of the child has declined [*5]to exercise jurisdiction on the ground that this state is the more appropriate forum," so long as the child and at least one parent have a "significant connection" to New York and there is "substantial evidence [in New York] concerning the child's care, protection, training, and personal relationships" (Domestic Relations Law § 76 [1] [b]). The second alternative category applies if "all courts having jurisdiction under [section 76 (1) (a) or (b)] have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum" (§ 76 [1] [c]). And the third alternative jurisdictional category applies if "no court of any other state would have jurisdiction under the criteria specified in [section 76 (1) (a), (b), or (c)]" (§ 76 [1] [d]).
The collective provisions of Domestic Relations Law § 76 are limitations on the subject matter jurisdiction of the New York courts in custody matters (see Vernon, 100 NY2d at 962-963; Matter of Mott v Patricia Ann R., 91 NY2d 856, 859 [1997]). In the absence of an emergency situation (see § 76-c), a New York court "has jurisdiction to make an initial child custody determination only if" one of its enumerated jurisdictional predicates exists (§ 76 [1] [emphasis added]). Further underscoring the jurisdictional primacy of section 76 (1) in the custody realm, the legislature has decreed that its provisions are "the exclusive jurisdictional basis for making a child custody determination by a court of this state" (§ 76 [2] [emphasis added]). Thus, a court that makes a custody determination in derogation of section 76 (1) has exceeded its subject matter jurisdiction (see Matter of Baker v Spurgeon, 85 AD3d 1494, 1495-1496 [3d Dept 2011], lv dismissed 17 NY3d 897 [2011]), and the corresponding order is properly vacated under CPLR 5015 (a) (4) (see Matter of DeNoto v DeNoto, 96 AD3d 1646, 1647 [4th Dept 2012]).
B
The court relied on two theories to support its subject matter jurisdiction in this case. First, the court held that the father waived his right to challenge its subject matter jurisdiction by filing his own cross petition and by failing to move against the mother's petition on jurisdictional grounds. Second, the court found that it had home state jurisdiction under Domestic Relations Law § 76 (1) (a). The mother endorses the court's waiver analysis, and she advances two additional arguments of her own, namely, that the court had safety net jurisdiction pursuant to section 76 (1) (d) and that it could exercise subject matter jurisdiction because "New York was the state in which the child was present at the commencement of the proceedings." We will examine these four jurisdictional theories in turn.
1. Waiver
Initially, we reject the notion that the father waived any objection to the court's subject matter jurisdiction. As the Second Department recently explained in Caffrey v North Arrow Abstract & Settlement Servs., Inc. (160 AD3d 121 [2d Dept 2018]), it is black letter law that a "defect in subject matter jurisdiction may be raised at any time by any party or by the court itself, and subject matter jurisdiction cannot be created through waiver, estoppel, laches, or consent" (id. at 133; see Lacks v Lacks, 41 NY2d 71, 74-75 [1976], rearg denied 41 NY2d 862, 901 [1977]). It is therefore well established that an objection to subject matter jurisdiction may be raised for the first time in a motion to vacate pursuant to CPLR 5015 (a) (4) (see Nash v Port Auth. of N.Y. & N.J., 22 NY3d 220, 224 [2013] ["objections made pursuant to CPLR 5015 (a) (4) survive a final judgment"]; see e.g. Wells Fargo Bank NA v Podeswik, 115 AD3d 207, 214 [4th Dept 2014]; DeNoto, 96 AD3d at 1647).
Because the father did not — indeed, could not — waive his challenge to the court's subject matter jurisdiction, we turn now to the heart of the matter: did the court have subject matter [*6]jurisdiction over this custody proceeding on the date of its commencement (January 8, 2016)? For the reasons that follow, we hold that it did not.
2. Home State Jurisdiction
According to the court, it had home state jurisdiction over this proceeding as of the commencement date [FN3]. We disagree. As noted above, the Domestic Relations Law defines the term "home state" as "the state in which a child lived with a parent . . . for at least six consecutive months immediately before the commencement of [the] proceeding" or, "[i]n the case of a child less than six months of age, . . . the state in which the child lived from birth with any [parent]" (§ 75-a [7]). Here, the mother averred in her petition that the child was born in New Jersey and moved to New York on July 15, 2015, and the father averred in his cross petition that the child was born in New Jersey and moved to New York in August 2015. Under either party's proffered time line, the child had not lived in New York either since birth or for six months as of January 8, 2016. New York therefore was not the child's "home state" on January 8, 2016 and, as the mother now concedes, the court simply did not have home state jurisdiction over this proceeding under section 76 (1) (a) (see Matter of Slade v White, 133 AD3d 767, 768 [2d Dept 2015]; Matter of Agueda v Rodriguez, 103 AD3d 716, 717 [2d Dept 2013], lv denied 21 NY3d 854 [2013]; Matter of Malik v Fhara, 97 AD3d 583, 584 [2d Dept 2012]).[FN4]
3. Safety Net Jurisdiction
Instead of claiming home state jurisdiction under Domestic Relations Law § 76 (1) (a), the mother essentially argues that the court had subject matter jurisdiction over this proceeding under the safety net provision of section 76 (1) (d), which confers jurisdiction to make custody determinations when, insofar as relevant here, "no court of any other state would have jurisdiction under the criteria specified in [section 76 (1)] (a)."[FN5]
We reject the mother's reliance on section 76 (1) (d). Under the special UCCJEA definition of "home state" applicable to infants under six months old (Domestic Relations Law § 75-a [7]; NJ Stat Ann
§ 2A:34-54), New Jersey was the child's "home state" between the date of his birth (February 18, 2015) and the alleged date of his move to New York (July 15, 2015)[FN6]. Because the UCCJEA confers continuing jurisdiction on the state that "was the home state of the child within six months before the commencement of the proceeding" if a parent lives in that state without the child (Domestic Relations Law § 76 [1] [a]; NJ Stat Ann § 2A:34-65 [a] [1]), it follows that New Jersey retained continuing jurisdiction of this matter until January 15, 2016, i.e., six months after the child's alleged move to New York on July 15, 2015 and one week after the instant proceeding was commenced on January 8, 2016 (see Campbell, 12 AD3d at 669-670; compare Destiny EE., 90 AD3d at 1440). Thus, New York lacked jurisdiction under section 76 (1) (d) because New Jersey could have exercised jurisdiction under the criteria of section 76 (1) (a) on the date of this proceeding's commencement (see NJ Stat Ann § 2A:34-65 [a] [1] [identical New Jersey provision to Domestic Relations Law § 76 (1) (a)]). After all, section 76 (1) (d) applies only when no state could have exercised jurisdiction under the criteria of section 76 (1) (a) at the commencement of the proceeding, and that is simply not the situation here.
Although this case reflects a fact pattern of first impression in New York (see B.B. v A.B., 31 Misc 3d 608, 612 [Sup Ct, Orange County 2011] [so noting]), our interpretation of the interplay between sections 76 (1) (a) and 76 (1) (d) is consistent with the Washington State Court of Appeals' decision in In re McGlynn (154 Wash App 1020 [Ct App 2010]). As far as we can discern, McGlynn is the only foreign case to squarely address the precise fact pattern at bar.
In McGlynn, the subject child was born in Washington State. After living in Washington with his parents for approximately 3½ months, however, the child was moved to Poland by his mother. The father, who still resided in Washington, then filed a custody application in Washington approximately 5½ months after the child's departure (id. at *1). Reversing the trial court's dismissal of the father's custody application on subject matter jurisdiction grounds, the Washington Court of Appeals held that Washington (which occupied the same position as New Jersey in our case) had jurisdiction under its UCCJEA equivalent of section 76 (1) (a) because Washington had been the child's home state within six months of the proceeding's commencement date. In arriving at that conclusion, the McGlynn court recognized that Washington was the child's home state by virtue of the special definition of "home state" applicable to infants under the age of six months, not because he had lived in Washington for the six consecutive months immediately prior to filing of the custody application (id. at *4-5). The import of McGlynn — correct in our view — is that a home state retains continuing jurisdiction irrespective of whether it acquired home state status by virtue of the child's residence since birth [*7]or by virtue of his or her residence for six months.[FN7]
4. Physical Presence Jurisdiction
Finally, the mother argues that the court had subject matter jurisdiction because "New York was the state in which the child was present at the commencement of the proceedings." But that contention is interdicted by Domestic Relations Law § 76 (3), which says that the subject child's "[p]hysical presence . . . is not necessary or sufficient to make a child custody determination." Indeed, by examining the court's jurisdiction through the lens of the child's physical presence instead of his "home state," the mother would have us resurrect a jurisdictional modality that has been defunct for over 40 years.
C
The parties' remaining points can be quickly dispatched. The arguments pressed by the mother and the AFC concerning the father's purported entitlement to vacatur under CPLR 5015 (a) (1) are of no moment because the father never sought to vacate the underlying order on that ground. Indeed, the court's discussion of that issue in its written decision was improperly advisory (see Gilberti v Town of Spafford, 117 AD3d 1547, 1550 [4th Dept 2014]; Sunrise Nursing Home, Inc. v Ferris, 111 AD3d 1441, 1442 [4th Dept 2013]). The father's remaining contentions are academic and, in any event, are not cognizable grounds for vacatur under CPLR 5015 (a) (see generally Lacks, 41 NY2d at 72-77).
CONCLUSION
The court had no subject matter jurisdiction to adjudicate the parties' competing custody petitions. Accordingly, the order appealed from should be reversed, the father's motion to vacate granted, the order entered February 8, 2017 vacated, and the petition and cross petition dismissed.
Entered: April 26, 2019
Mark W. Bennett
Clerk of the Court



Footnotes

Footnote 1: The applicable sections of the Domestic Relations Law were renumbered slightly as part of New York's transition from the UCCJA to the UCCJEA. That slight but significant numbering variation magnifies the difficulty of tracking the evolution of the various statutory provisions in the uniform statutory codes.

Footnote 2: Professor Sobie explains that the "six-month residential time period was chosen . . . [because m]ost American children are integrated into an American community after living there six months; consequently, the period of residence would seem to provide a reasonable criterion for identifying the established home" (id. [internal quotation marks omitted]).

Footnote 3: This proceeding was deemed commenced upon the filing of the mother's petition, and the commencement date is not affected by the father's subsequent filing of a cross petition under the same index number within the same proceeding (see Domestic Relations Law § 75-a [5] [" Commencement' means the filing of the first pleading in a proceeding" (emphasis added)]; see e.g. Matter of Marrero v Centeno, 71 AD3d 771, 772 [2d Dept 2010]). Moreover, because section 76 (1) (a) explicitly ties a court's subject matter jurisdiction to the circumstances existing on the "date of the commencement of the proceeding" (id.), any post-commencement developments — such as the filing of a cross petition — cannot "retroactively vest Family Court with subject matter jurisdiction" over the proceeding (Matter of Milani X. [Katie Y.], 149 AD3d 1225, 1226 n [3d Dept 2017]; see Gomez v Gomez, 86 AD2d 594, 595 [2d Dept 1982], affd 56 NY2d 746 [1982]).

Footnote 4: The fact that the child has now lived in New York for several years is irrelevant to our jurisdictional analysis. As the Court of Appeals wrote in Gomez (56 NY2d at 748), since "our courts [were] without jurisdiction when the proceeding was begun, the sojourn of the child in New York as a result of orders made without jurisdiction cannot result in the acquisition of jurisdiction."

Footnote 5: The mother's current assertion that no state had jurisdiction under the criteria of section 76 (1) (a) on January 8, 2016 directly contravenes her sworn assertion in the petition that New York had such jurisdiction on that very date. For purposes of this appeal we will assume, without deciding, that the mother is not judicially estopped from opposing the father's motion to vacate with an alternative theory of subject matter jurisdiction that contradicts the theory successfully asserted in her petition.

Footnote 6: For ease of discussion, we will assume, arguendo, that the child moved to New York on the date alleged by the mother, i.e., July 15, 2015. The analysis, however, would be no different if, as the father claims, the child actually moved to New York in August 2015.

Footnote 7: Like McGlynn, we decline to follow the Nebraska Supreme Court's view that the special definition of "home state" for infants under six months old "applies only to a child custody case involving a child under the age of 6 months of age at the time of the commencement of the proceedings" (Carter v Carter, 276 Neb 840, 847, 758 NW2d 1, 7 [2008] [emphasis added]).