Matter of Mark B. v Tameka D. (2020 NY Slip Op 02833)





Matter of Mark B. v Tameka D.


2020 NY Slip Op 02833


Decided on May 14, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 14, 2020

528056

[*1]In the Matter of Mark B., Respondent,
v
Tameka D., Appellant.

Calendar Date: March 25, 2020

Before: Lynch, J.P., Mulvey, Devine, Aarons and Colangelo, JJ.


Paul J. Connolly, Delmar, for appellant.
Lawrence E. Becker, Albany, for respondent.
Peter J. Scagnelli, Albany, attorney for the child.



Mulvey, J.
Appeal from an order of the Family Court of Albany County (Walsh, J.), entered November 27, 2018, which, among other things, partially granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for custody of the parties' child.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of a daughter (born in 2005). The child lived with the mother in North Carolina until 2006, when the mother informally gave custody of the child to the paternal grandfather and his wife (hereinafter the step-grandmother), who then lived in Ulster County. In 2010, Family Court (McGinty, J.) granted the step-grandmother's petition to be appointed the child's guardian. At some point between 2010 and 2012, the grandfather and step-grandmother moved to Arizona with the child. While the child lived there, the father had phone or video-chat contact with her every day. He also saw her on some holidays and spent time with her for three summers, including a month-long visit one year. During the child's residence in Arizona, the mother had phone contact with the child once each week but had no in-person contact. In 2016, the mother moved from North Carolina to Massachusetts. In December 2017, after the step-grandmother apparently could no longer tolerate the child's bad behavior, the child moved to Massachusetts to live with the mother. Within a few weeks, the father began taking the child for visits every weekend at his home in Albany County. In March 2018, at the child's request, the father came to pick her up and take her to live with him. Shortly thereafter, he commenced this proceeding seeking sole legal and physical custody. The mother moved to dismiss the petition due to lack of jurisdiction. Family Court (Walsh, J.) denied the motion. Following a hearing, the court partially granted the petition by awarding the parties joint legal custody, with primary physical custody to the father. The mother appeals.
Family Court properly denied the mother's motion to dismiss the petition because the court had subject matter jurisdiction pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act (see Domestic Relations Law art 5-A [hereinafter UCCJEA]). The UCCJEA delineates four situations in which a state's courts can have jurisdiction to entertain an initial custody proceeding (see Domestic Relations Law § 76 [1]). The UCCJEA operates like a flowchart, where, if jurisdiction is proper under a prescribed situation, the analysis need not proceed to the subsequent situations. The analysis typically begins with determining the child's "home state," which is defined, as relevant here, as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding" (Domestic Relations Law § 75-a [7]). The first situation under which a state's courts have jurisdiction is if that state is the child's home state on the date of commencement, or was the home state within the prior six months and "the child is absent from th[e] state but a parent or person acting as a parent continues to live in th[e] state" (Domestic Relations Law § 76 [1] [a]). This situation does not apply here. The child had lived in New York for less than a month before the commencement of this proceeding, so New York was not her home state at that time and had not been since at least 2012.
The second situation arises, as relevant here, if no other state's courts have jurisdiction under the first situation and "(i) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and (ii) substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships" (Domestic Relations Law § 76 [1] [b]). To begin, we must determine whether any other state had jurisdiction under the first situation. Massachusetts was never the child's home state because she lived there for less than three months. Although the child had lived in Arizona for several years, that period of residence did not occur "immediately before the commencement of [this] child custody proceeding," as required to constitute a home state (Domestic Relations Law § 75-a [7] [emphasis added]; see Matter of Destiny EE. [Karen FF.], 90 AD3d 1437, 1440 [2011], lv dismissed 19 NY3d 856 [2012]). Thus, the child had no home state at the time that this proceeding was commenced (see Matter of Breselor v Arciniega, 123 AD3d 1413, 1415 [2014]; Matter of Destiny EE. [Karen FF.], 90 AD3d at 1440). Despite Arizona not being the child's home state on the date of commencement of this proceeding, Arizona had been the child's home state until she moved to Massachusetts, which occurred within six months prior to commencement of this proceeding. The child was absent from Arizona at the time of commencement, but neither parent ever lived there. Although the step-grandmother appears to have been a "[p]erson acting as a parent" while she cared for the child (Domestic Relations Law § 75-a [13]), in the fall of 2017, she signed documents relinquishing her rights and obligations to the child, disavowing her guardianship and releasing the child to the mother; thus, for jurisdictional purposes, she did not qualify as "a person acting as a parent [who] continues to live in" Arizona (Domestic Relations Law § 76 [1] [a]).
As the child had no home state and no state's courts had jurisdiction under Domestic Relations Law § 76 (1) (a), New York courts had jurisdiction if the child and the father had a significant connection with this state and substantial evidence concerning her care and relationships was available here (see Domestic Relations Law § 76 [1] [b]; Matter of Defrank v Wolf, 179 AD3d 676, 678 [2020]; Matter of Breselor v Arciniega, 123 AD3d at 1415). "Such a connection exists only when the forum in which the litigation is to proceed has optimum access to relevant evidence" (Matter of Destiny EE. [Karen FF.], 90 AD3d at 1442 [internal quotation marks and citations omitted]). The father was a New York resident. As of June 2018 when the mother raised the jurisdictional issue (see id. at 1440; Gomez v Gomez, 86 AD2d 594, 595-596 [1982]), the child had lived with the father for approximately three months, had visited with him here every weekend for at least 2½ months prior to her move and had previously lived here from 2006 until at least 2010. Witnesses and documents were available in New York to address the child's schooling for the prior months while she lived with the father, her home life with him, the paternal relatives who lived in this state and other aspects of her "care, protection, training, and personal relationships" (Domestic Relations Law § 76 [1] [b] [ii]). Accordingly, New York courts had jurisdiction over this initial custody proceeding pursuant to Domestic Relations Law § 76 (1) (b) (see Matter of Breselor v Arciniega, 123 AD3d at 1415-1416).
Family Court did not err in granting primary physical custody to the father. Family Court "is afforded broad discretion in determining the best interests of the child, and its determination will not be disturbed unless it lacks a sound and substantial basis in the record" (Matter of Zaida DD. v Noel EE., 177 AD3d 1220, 1220-1221 [2019] [internal quotation marks and citation omitted]). While the child lived in Arizona, the mother called the child weekly and had no in-person visits. During that same time, the father had daily phone or video contact with the child and had visits with her each of three summers. Starting a few weeks after the child moved in with the mother, the father began driving to Massachusetts to pick the child up and bring her to his home for visits every weekend. The child called the father to pick her up so she could live with him permanently after she had an argument with the mother. Although the mother testified that she thought the child was going with the father for only one week, the mother also testified that the father tried to mediate the disagreement and finally told the child that if she went with him it would not be a back-and-forth situation. The father testified that he encouraged the child to call the mother, and he was present several times when the child called and received no answer. In the six months that the child had lived with the father before the hearing, the mother had talked to the child on the phone three times, had not visited her at all and testified that she had not made any arrangements to see the child.
Each parent has an appropriate home for the child, and she apparently did well in school when living with each of them. The father takes her to see paternal relatives, but she has not seen any maternal relatives. Family Court considered the father's criminal past and history with substance abuse, including his completion of outpatient treatment. The mother has three other children, none of whom live with her due to involvement by Child Protective Services. The child had bonded more with the father, whereas her relationship with the mother was more strained and fragile. Though not determinative, the attorney for the child informed the court that the child, who was 13 years old, preferred to live with the father (see Matter of Turner v Turner, 166 AD3d 1339, 1340 [2018]). Based on the father's involvement in the child's life, the child's stability and connections in New York, and the lack of relationship between the child and the mother, and giving deference to Family Court's credibility determinations, the court's grant of primary physical custody to the father is supported by a sound and substantial basis in the record (see Matter of O'Hara v DeMarsh, 161 AD3d 1271, 1273-1274 [2018]; Matter of Gentile v Warner, 140 AD3d 1481, 1483 [2016]).
Lynch, J.P., Devine, Aarons and Colangelo, JJ., concur.
ORDERED that the order is affirmed, without costs.